## THE N. K. FAIRBANK COMPANY

*v.*

### FRED NICOLAI.

*Filed at Ottawa June 8, 1897.*

1. NUISANCE—*action for maintaining a nuisance—measure of damages.* In an action for damages to property occasioned by the defendant's maintaining a nuisance in the vicinity, the general depreciation in the market or selling value of the property during the period of the nuisance is not the measure of damages.

2. SAME—*measure of damages where owner has resided on property.* Where the owner has resided on property during the period for which he seeks to recover damages occasioned by a nuisance, his damages must be measured by his discomfort and the deprivation of the healthful use and comforts of his home, and not by the depreciation in rental value of the property.

3. APPEALS AND ERRORS—*party trying case on one theory cannot substitute another on appeal.* A defendant in an action for nuisance who tries the case and submits his instructions upon an erroneous theory as to the proper measure of damage, cannot, on appeal, be permitted to abandon that theory and substitute another.

4. SAME—*when instruction to disregard evidence will not cure error in its admission.* An instruction to disregard evidence improperly admitted will not cure the error in its admission, where it appears that the verdict of the jury must have been influenced by a consideration of the evidence.

5. INSTRUCTIONS—*argumentative instructions may be refused.* An instruction announcing correct principles of law may be refused when drawn in an argumentative form.

*Fairbank Co.* v. *Nicolai,* 66 Ill. App. 637, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county;. the Hon. NATHANIEL C. SEARS, Judge, presiding.

OLIVER & MECARTNEY, for appellant:

In order for an individual to recover for an injury resulting from a public nuisance, he must show that he has suffered in a manner different from all others affected by such nuisance. 16 Am. & Eng. Ency. of Law, 971; *Chicago* v. *Union Building Ass.* 102 Ill. 379.

A verdict will aid a defective statement of title, but will never assist a statement of a defective title or cause of action. *Barnes* v. *Brookman,* 107 Ill. 317; *Eilenberger* v. *Nelson,* 64 Ill. App. 277; *Railway Co.* v. *Hoyt,* 50 id. 583; *Railroad Co.* v. *Hines,* 132 Ill. 161; *Matson* v. *Swanson,* 131 id. 263; *People* v. *Spring Valley,* 129 id. 178.

Where a verdict is so large that it can only be accounted for on the ground of the prejudice or misconception of the jury, the judgment will be reversed. *Lowenthal* v. *Strong,* 90 Ill. 74.

If plaintiff himself occupies the premises the damages are to be measured by the discomfort, and the rental value cannot be considered or given in evidence. 1 Wood on Nuisances, (3d ed.) 706.

J. WARREN PEASE, for appellee:

To live comfortably is the chief and most reasonable object of men acquiring property, and any interference with our neighbor in the comfortable enjoyment of life is a wrong which the law will redress. *Wahle* v. *Reinbach,* 76 Ill. 322; *Secord* v. *People,* 22 Ill. App. 279; *Iliff* v. *School Directors,* 45 id. 419.

Men must so use their own property and so exercise their own privileges that they do not thereby destroy or imperil the rights of others,—and this is so even in the exercise of rights not prohibited by law and in carrying on a trade or business not a nuisance *per se. Coal Co.* v. *Glass,* 34 Ill. App. 364; *Railroad Co.* v. *Grabill,* 50 Ill. 241.

The owner of land has the right to the enjoyment of the air above it in a reasonably pure and wholesome condition. Anything which deprives him of this enjoyment by polluting the air with smoke, dust, smells, noxious gases or vapors, thus producing injury to health or property, is a nuisance. 16 Am. & Eng. Ency. of Law, 946.

The creation of stenches and noisome odors has been recognized always as a nuisance, and a trade or manufacture so conducted as to produce offensive stenches will

be enjoined, or deemed a subject for damages or indictment, as the case may be. 16 Am. & Eng. Ency. of Law, 952; *Ottawa Gas Light Co.* v. *Graham,* 28 Ill. 73; *Ottawa Gas Light Co.* v. *Thompson,* 39 id. 598; *Railroad Co.* v. *Darke,* 148 id. 226; *Baker* v. *Leka,* 48 Ill. App. 353; *Tomle* v. *Hampton,* 28 id. 148; *Railroad Co.* v. *Darke,* 50 id. 280.

The amount of plaintiff's damages was to be ascertained by the jury, in view of all the evidence and under the instructions of the court. *Railway Co.* v. *Leah,* 152 Ill. 249; *Ottawa Gas Light Co.* v. *Graham,* 28 id. 73; *Gempp* v. *Bassham,* 60 Ill. App. 84; 5 Am. & Eng. Ency. of Law, 38.

The finding of the Appellate Court upon this question is conclusive. *Joliet* v. *Weston,* 123 Ill. 641; *Railroad Co.* v. *Bode,* 150 id. 396.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Appellee has been the owner, since the year 1856, of a lot with a frontage of twenty-four feet on Twentieth street, in the city of Chicago, and extending back a hundred feet, on which there is a frame cottage one story and a half high, occupied by him as his homestead. Opposite his cottage, on the other side of the street, are three sheds of appellant used for storing barrels. Appellee brought this suit against appellant for maintaining a nuisance in these sheds for two years prior to October 23, 1894, by storing therein barrels full of refuse, decayed matter, filth and unwholesome substances, and for throwing upon Twentieth street, and in its vicinity near his lot, refuse matter from appellant's factory. There was a verdict for $1500 damages suffered during the two years for which suit was brought. Judgment was entered upon this verdict, and the Appellate Court has affirmed the judgment.

Empty barrels that had contained tallow or grease for use in the soap factory, after being steamed out so as to get out all the grease possible by that means, were

stored under these sheds.   Cotton-seed oil, in the process of refining, leaves a residuum to be made into soap, which, after being treated with alkali, is about the color of unrefined molasses.   This is called "soap stock," and in addition to the empty barrels there were others containing this product.   It is odorless unless a barrel leaks or there is "soap stock" on the outside, when it becomes rancid.   Other barrels contained what is known as "soap No. 3," that has less moisture, is almost as stiff as bar soap, and smells like ordinary soap.   The evidence for plaintiff was that these barrels smelled very badly and attracted flies and cockroaches to the neighborhood, while the testimony for defendant was that there was scarcely any smell about them.

The material which it was claimed had been deposited in the street was spent fuller's earth, and the settlings cleaned out of the bottoms of defendant's soap kettles, oil tanks and glycerine tanks.   Fuller's earth is used to filter oils through.   It takes up the coloring matter and renders them white.   After the process of filtering, the defendant steams the earth to get all the fat possible out of it, and then it is carried away as spent fuller's earth.   What is called "kettle bottoms" is inorganic matter, such as sand or gravel, which settles to the bottom of kettles or tanks.   The evidence for plaintiff tended to prove that defendant dumped this refuse matter in Twentieth street, in front of and near his premises, and that it was very offensive and attracted insects to the neighborhood.   The evidence for defendant tended to prove that the refuse was hauled away, and not dumped in the street; that it was first hauled upon the cars of the Lake Shore railroad, and afterwards it was removed by other parties with whom defendant contracted, and who were paid to remove all waste material from its premises.   Defendant's witnesses testified that the spent fuller's earth and "kettle bottoms" merely had a somewhat greasy smell, which soon passed away.

There were two counts in the declaration, in both of which damages were claimed for depreciation in the value of the property, and in the second, injury to rental value was also alleged. Against the objection of defendant the plaintiff testified that his property was worth about $8000 before the dumping of the refuse and the building of the sheds. One of his witnesses, against a like objection, testified that in the fall of 1894 it was worth nothing for residence purposes on account of the nuisance. Another witness was asked to state the value of the property on October 23, 1892, and also on October 23, 1894, —the beginning and end of the period sued for. The question was objected to, and, the objection being overruled, the defendant saved its exception. The witness answered that in 1892 the property was worth about $7000 and in 1894 hardly $1000. The depreciation in the market or selling value of the premises was not the measure of damages, and evidence of such depreciation could only tend to mislead the jury. As to nuisances which may be removed at any time or abated at the instance of a party aggrieved thereby, that is not a proper measure of the injury. When the evidence was admitted the court said that permanent damages could not be recovered, but plaintiff could show the value of the premises, as bearing upon the question of the value of the temporary use of them. An instruction was asked by defendant that the plaintiff was not entitled to recover anything for depreciation in value, and that the jury should disregard the testimony that the property was of less market value than two years before. The court modified the instruction, authorizing the jury to consider the testimony so far as it might bear upon the question of rental value or value of use. The evidence and the modification are both complained of, and it is urged that the questions of value and rental value, as presented to the jury in the evidence and instruction, had no place in the case.

So far as rental value is concerned, it is true that, since the plaintiff occupied the premises himself, the damages were to be measured by his discomfort and the deprivation of the use and comforts of his home; but the defendant agreed with the plaintiff that the difference in rental value was the measure of damages, and not the injury by being deprived of a comfortable use and enjoyment of a home. Several of the defendant's instructions submitted the case upon the theory that depreciation of rental value was a proper element, and it cannot now be permitted to abandon the theory to which it assented on the trial and substitute another. The case was tried upon an improper theory in that respect, but it seems that the evidence of depreciation in value, which could not be taken into account, must have influenced the verdict. The only direct evidence of depreciation in rental value was of the house next door, apparently of equal rental value, and the depreciation in that case amounted to $17.50 a year, or $35 for the two years, which is out of all proportion to the verdict. Conceding that it was proper to show the character and value of the premises without the nuisance, to enable the jury to understand and estimate the amount necessary to compensate plaintiff for being deprived of the comfortable use and enjoyment of it as his home, it was not proper to show permanent depreciation in market value as a ground of recovery. Even if it had any bearing on the question at issue, the evidence of depreciation in market value was not limited to the effects of what it was claimed defendant had done. The street was occupied by old frame buildings containing many tenants, and mostly occupied by a colony of Italians,—fruit peddlers,—who kept swill and garbage-boxes in the street. These boxes were often full to overflowing with rotten and ill-smelling bananas, fruit and vegetables. There was also evidence that the fruit peddlers' carts were dumped in the street, which

was not paved and had been much below grade. During a few years before the trial it had been filled up about four feet, and it was shown that others beside defendant dumped rubbish there, and that the city wagons deposited old vegetables, barrels, hay and garbage, as well as clay, sand and dirt. The evidence of depreciation was not confined to what defendant did; and besides, there may have been other causes of depreciation in market values or depression in prices in Chicago during that period, not due to smells, cockroaches or insects. Giving the instruction did not cure the error.

It is also complained that plaintiff and other witnesses in his behalf testified beyond the limit of time for which he sued; but there was no objection to such testimony, and, if incompetent, it cannot be the subject of complaint.

It is also claimed that the court erred in refusing to give the fifth instruction asked by defendant, as follows:

"You are instructed that the law does not give damages for every inconvenience to or interruption of the rights of another. There are numerous annoyances which, in the nature and condition of society, must inevitably arise and accrue to the property of individuals which cannot in themselves fix a legal liability on the person causing such inconvenience or interruption. The injury for which the law gives damages must be real, and not imaginary or whimsical. It must be material, and not simply inconvenience or trifling interruption; and unless such injury has been inflicted in this case the jury should find for the defendant."

It is true that the damages must be real, and not imaginary or whimsical; that the annoyances ordinarily and necessarily incident to the ownership of property in populous cities do not afford a ground for action, and that such inconveniences as only affect people of delicate sensibilities and fastidious habits do not fix a legal liability; but it was not error to refuse the instruction in the argumentative form in which it was drawn.

A motion in arrest of judgment was made and over-ruled, and it is insisted that the court was in error in so doing. It will not be worth while to discuss at length the questions raised as to the sufficiency of the declaration, as the case will be tried again probably upon somewhat different pleadings. Although both counts might have been subject to demurrer, we think that the second count was sufficient after verdict.

The judgments of the Appellate Court and Superior Court of Cook county are reversed, and the cause is remanded to the latter court.

*Reversed and remanded.*