## Chicago Union Traction Company v. Wilhelmina Arnold

### Gen. No. 13,060.

1.   EVIDENCE—*when rulings upon, should be accurate.* Where the evidence upon a disputed issue is in sharp conflict, the rulings with respect to the admission and rejection of evidence should be accurate.

2.   INCOMPETENT EVIDENCE—*when striking from record, does not cure error in admission.* Where evidence of a prejudicial character has been erroneously admitted, the mere striking it from the record does not always cure the mischief resulting from its introduction.

3.   WITNESS—*party cannot impeach his own.* A party calling a witness has no right to seek upon his redirect examination to discredit the testimony which he has given and to impugn his motives.

4.   WITNESS—*non-production of, may be explained.* A party who has not produced a witness is entitled to show why such witness has not been produced.

5.   ARGUMENT OF COUNSEL—*when ground for reversal.* Where in argument counsel has made a remark for the purpose of inflaming the minds of the jury, a reversal will follow.

Action in case for personal injuries.   Appeal from the Circuit Court of Cook county; the Hon. MERRITT W. PINCKNEY, Judge, presiding.   Heard in this court at the March term, 1906.   Reversed and remanded.   Opinion filed March 5, 1907.

JOHN A. ROSE and ALBERT M. CROSS, for appellant; W. W. GURLEY, of counsel.

MILES J. DEVINE, for appellee.

MR. JUSTICE HOLDOM delivered the opinion of the court.

Appellee sues for a personal injury suffered, as she claims, through the negligence of appellant in suddenly starting the car upon which she was a passenger from a standing position while she was in the act of alighting, the car having been brought to a stand still for that purpose. A trial resulted in an assessment of damages by the jury of $10,000, from which, at the suggestion of the trial judge, $6,000 was remitted and a judgment rendered upon the verdict, after the *remittitur*, for $4,000, and the record is before this court for review. No question arises upon the pleadings, they being sufficient in themselves to support a judgment. The errors assigned present as material questions for our consideration the rulings of the trial court in the admission of evidence, the excessiveness of the verdict, the taint of prejudice and passion in the jury, and improper remarks of appellee's counsel in the presence of the jury.

As a new trial must be awarded, we shall confine this opinion to the discussion of that testimony, only, which we deem error sufficiently flagrant to call for a reversal, leaving the parties free to develop the facts upon a new trial, taking care not to repeat the errors here pointed out.

The injuries claimed to have been suffered by appellee, as disclosed by the averments of her declaration and supported somewhat by the testimony of her husband and medical attendants, were sprained back and spine, sprained and dislocated left shoulder and fractured left ankle, some broken ribs and a bruised and contused left leg. The testimony as to these injuries was not harmonious. Even appellee's doctors were at variance in their testimony. Such being the condition, care and exactness was the imperative duty of the trial court in its rulings upon the evidence, in order to exclude from the hearing of the jury irrelevant and improper testimony calculated to injuriously

affect their minds and judgment in arriving at a verdict. C. & E. I. R. R. v. Donworth, 203 Ill. 192; Traction Co. v. Daly, 129 Ill. App. 519.

Dr. Williams testified that he had been the physician of appellee and her family for twenty years prior to the accident, and that he was called to attend appellee's injuries the morning after the night of the day she suffered them.  The difficulties which he found appellee to be then afflicted with, and for which he treated her medically for nearly four months, were a fracture of the outer malleolus joint of the left ankle and a laceration of the ligaments of the outer aspect of the joint, causing an intensely swollen and contused condition, and a fracture of some ribs upon her left side. She was as a result of these injuries confined to her bed between four and six weeks, at the end of which time she moved around with the assistance of crutches. On cross-examination Dr. Williams testified that appellee gave no indication, by way of complaint or otherwise, of any injury to her spine, or that she suffered from womb or pelvic trouble; that he found no evidence of pleurisy during the four months he attended her; that he was not friendly to appellant; that he had had litigation with appellant, lasting several years, which finally terminated in the Supreme Court in his favor.  On re-direct examination he stated that he did not feel very friendly to Mrs. Arnold because at the end of his four months of treatment he was "dropped like a hot potato," and superseded in the case by Dr. McGregor.  On the re-direct examination of Dr. Williams counsel for appellee seemingly endeavored to discredit his testimony and impugn his motives. We are unable to find anything in this record justifying such attitude.  He was presented as a witness by appellee and gave testimony vital to her right of recovery, and his evidence established injuries which, if uncontradicted and attributable to the negligence of appellant, entitled her to an assessment of damages for such in-

juries against appellant. By proffering him as a witness appellee vouched for the verity of his testimony.

Dr. McGregor, who was unknown to appellee, was called into the case at the instance of her counsel, whom he had served in like cases before, and for whom he had acted as a witness in the trial of other personal injury cases. It will subserve no good purpose to follow Dr. McGregor in much of his testimony, for he may again be a witness upon a retrial, more than to remark that his testimony enlarged upon the injuries related by Dr. Williams and added others to them, which if true affected appellee's case in many material particulars. Against the objection of appellant Dr. McGregor was permitted to testify that appellee suffered from womb trouble, that an operation of her pelvic organs disclosed that she had retroversion and inflammation of the womb. This testimony was admitted upon the theory that this condition of her female organ was directly attributable to the accident as its proximate cause. This was entirely without foundation in fact, and after the testimony in relation thereto was before the jury, on motion of appellant at the close of the evidence for appellee, with the acquiescence of appellee, it was stricken out.

There is nothing in this record, aside from the unfounded testimony of Dr. McGregor, pointing to the womb trouble of appellee as in any manner attributable to the accident charged in the declaration. That such testimony, though stricken out, impressed itself upon the minds of the jury and was heeded by them in assessing damages, we cannot doubt, in view of the large and confessedly excessive verdict. Striking out this evidence did not cure the mischief its introduction had wrought. On such a vital matter the ruling of the court should have been in consonance with the law. Tumalty v. Parker, 100 Ill. App. 382; Norris v. Warner, 59 Ill. App. 300; Hanewacker v. Ferman, 152 Ill. 321; Fairbanks v. Nicolai, 167 Ill. 242.

The largeness of the verdict and the *remittitur* of

sixty per cent. of it by appellee is cogent, and, as near as can be, conclusive evidence to this court that the jury were influenced to the detriment of appellant by its temporary admission, that though the evidence in form was stricken from the record, it still remained in the minds of the jury and unduly influenced them in their verdict.

The counsel of appellee in the conduct of the trial made improper remarks in the hearing of the jury, which tended to inflame their passions and to prejudice them against appellant. Counsel seemed to have regarded Dr. Williams as hostile because he was telling the truth, for, we hesitate not to say, the record bears evidence of the candor, fairness and honesty of Dr. Williams' testimony and bearing in court. He was frankness itself in  confessing that he was offended at his summarily being, without cause, supplanted by Dr. McGregor after twenty years confidential relationship with appellee and her family, and it was but human nature that he should feel affronted at what he had a right to regard as unmerited treatment. He said so when interrogated about it. We have no reason to suspect that Dr. Williams' testimony would have been otherwise than it was had he been continued in attendance upon appellee to the day of the trial. Counsel's remarks, addressed to the presiding judge, "Now, I think this court will agree with me when I say that this doctor—Williams—is a hostile witness here," was uncalled for and improper, and rendered doubly so by counsel, after the objectionable remark was stricken out by the trial judge, again emphasizing it by saying, "Well, I think the conditions in this case indicate that, your Honor." While all these remarks were stricken out, the evil effect upon the jury was by no means cured. Many other remarks of counsel are objected to and ruled out, but we will advert to but one more. In the closing argument appellee's counsel referred to appellant's conductor as

"trying to kill" appellee. There is nothing in the record which by the most exaggerated construction could be twisted as bordering on any such action or desire on the part of the conductor. The only purpose of the remark was to inflame the minds of the jury against appellant. In this it succeeded. Having done so, it is fatal error necessitating the depriving of appellee of the fruit thereof. W. C. St. Ry. v. Annis, 165 Ill. 475; E. J., etc., Ry. v. Fletcher, 128 Ill. 619; Union Traction, etc., v. Lauth, 216 Ill. 176.

The case at bar falls within the reasoning of the case last cited, in which the court says: "Although the trial court has sustained objections to the improper line of argument persisted in by counsel, a new trial should be awarded if it appears that the abuse of argument has worked an injustice to the other party by arousing the passion and prejudice of the jury despite the rulings of the court."

So here, despite the correct rulings of the court on the improper language of the counsel, the harmfulness of it was not eradicated, but is seen to have prevailed as a controlling factor with the jury in assessing appellee's damages at an excessive amount.

We do not wish to be understood as holding that the ruling of the trial court in rejecting the proffered testimony of the witness Joseph Devlin, to account for the non-production as witnesses of any employes of appellant in charge of the car at the time of the accident, was erroneous, as we think something more than the knowledge assumed to be possessed by Devlin was necessary. Upon a new trial evidence of the nature admitted for a like purpose in Hope v. West Chicago Street Ry. Co., 82 Ill. App. 311, will be permissible. It is proper and the practice to offer testimony to rebut a presumption arising from the non-production of witnesses inferrably within the control of a party where their absence is in no way explained or accounted for.

In the light of this record and the extraordinary and unusual amount of the voluntary *remittitur* from the verdict of the jury, a strong presumption obtains that the assessment of damages was the result of passion and prejudice in the minds of the jury controlling them in their deliberations, resulting in an excessive award. Appellant has not had that fair and impartial trial which the law guarantees in protection of the rights of every litigant, and the judgment of the Circuit Court is reversed and the cause remanded for a new trial.

*Reversed and remanded.*