### GARGAC et al. v. SMITH–ROWLAND CO.
### No. 9501.

United States Court of Appeals
Seventh Circuit.

Oct. 21, 1948.

Rehearing Denied Nov. 10, 1948.

Wesley Lueders, of Granite City, Ill., for appellant.

Morris B. Chapman and Gilbert Rosch, both of Granite City, Ill., for appellees.

Before SPARKS, Chief Judge, MINTON, Circuit Judge, and LINDLEY, District Judge.

LINDLEY, District Judge.

Defendant appeals from judgments entered in behalf of plaintiffs for damages suffered, as the jury found, by reason of defendant's wrongful acts in permitting waste matter, such as refuse from animal carcasses and other organic matter, to escape from its premises into a ditch and eventually into a lake bordering on plaintiffs' lands. It contends that the District Court never obtained jurisdiction of its person; that it was not properly served with summons; that the trial court erred in failing to direct a verdict in its favor and, finally, that the court erred in admitting evidence of conditions existing prior to October 15, 1940, five years prior to the commencement of the suit in 1945, and in "limiting" the effect of certain evidence offered by defendant, consisting of a statement by one of the plaintiffs that conditions in 1935 were not unsatisfactory.

Defendant's attack upon the jurisdiction of the District Court over its person and upon the process served upon it arises out of the following facts. Defendant is a Virginia corporation authorized to transact business in Illinois from the early thirties until 1943. During those years it operated a fertilizer plant adjoining plaintiffs' property. In 1943 it took steps in Virginia necessary to accomplish its dissolution and filed in Illinois an application for a certificate of its withdrawal of compliance with the Illinois statute, asserting that it was thereby surrendering its authority to transact business in the state, revoking the authority of its registered agent within the state to accept service of process and consenting "that service of process in any action, suit or proceeding based upon any cause of action arising in this state during the time the corporation was licensed to transact business in this state may hereafter be made on such corporation by service thereof upon the Secretary of State." This application was filed in compliance with subparagraph c, Section 157.120, Chapter 32, Illinois Revised Statutes 1947, which provides that a foreign corporation which desires to withdraw its permission to transact business within the state, must file an application reciting the facts and stating that it revokes the authority of its registered agent for service of process and consents that service in any suit, action or proceeding based upon any cause of action arising in the state during the time the corporation was licensed to transact business within the state, may thereafter be made on such corporation by service on the Secretary of State. The application to withdraw was allowed. ·

The pertinent statute of Virginia, Section 3810, Code of Virginia, 1919, provides that all dissolved corporations "shall; nevertheless, be continued for such length of time, not exceeding three years, from such dissolution or expiration, as may be necessary for the purpose of prosecuting and defending suits by or against them * * * ." Thus we are advised of the public policy of Virginia, as expressed in its legislative enactments, to retain for dissolved corporations a qualified existence for a limited period, that is, three years, for the purpose of affording creditors opportunity to liquidate their claims against it. We are informed also by the Illinois statute of that state's public policy, as reflected by its legislative enactment, that such a foreign corporation withdrawing from the state, must consent that it will remain in existence for the purpose of liquidating all claims against it arising in this state to the extent permitted by the domicile of the foreign corporation. It follows, we think, without any question, that though the corporation had been dissolved in Virginia, actions against it for a period of three years could be maintained in the courts of its domicile and that the statutes of Illinois express a public policy on the part of that state's legislature to extend the rights of creditors to sue such foreign corporations for a like period within the state of Illinois. Such public policy and such statutes have many times been approved by the courts. Kelly et al. v. International Clay Products Co., 291 Pa. 383, 140 A. 143; Floerchinger v. Sioux Falls Gas Co., 68 S.D. 543, 5 N.W.2d 55; Acton v. Washington Times Co., D.C., 12 F.Supp. 257, at page 259; Trounstine et al. v. Bauer, Pogue & Co., Inc., et al., 2 Cir., 144 F.2d 379, certiorari denied 323 U.S. 777, 65 S.Ct. 190, 89 L.Ed. 621; State of Washington v. Superior Court, 289 U.S. 361, 53 S.Ct. 624, 77 L. Ed. 1256. It follows that at the time this suit was begun, it was entirely legal within the state of Illinois and in accord with its public policy, that defendant thus dissolved should remain in existence for the purpose of liquidation of its affairs, in so far as the courts of Illinois might be concerned, and defendant, having expressly consented that process might be served upon the Secretary of State as its agent, thereby brought itself within the purview of the statute and was bound by it.

However inasmuch as process in this case was served, not upon the Secretary of State but upon the Chief Clerk of the corporation department, who is, under the law, Deputy Secretary of State, defendant contends that the service was insufficient. Though, as we have seen, Section 157.120 requires foreign corporations to consent

that the Secretary of State may be served as their agent for process, defendant insists that service of process may not be accomplished in any manner other than by serving him personally. But a preceding Section, 157.111, a part of the same chapter, covering service of process on foreign corporations, provides that whenever any foreign corporation authorized to transact business in this state fails to appoint a registered agent or whenever the certificate of authority of any foreign corporation shall be revoked "then and in every such case the Secretary of State shall be irrevocably authorized as the agent and representative of such foreign corporations to accept service of any process" and that such service "shall be made by delivering to and leaving with him, or with any clerk having charge of the corporation department of his office, duplicate copies of such process." We think the two sections of the statute must be read together and we think, further, that the word "revoke" includes a corporation's voluntary revocation of the authority of its legal agent and that it was the contemplation of the legislature, by virtue of the express provisions of Paragraph 157.111, that service of process would be completed by delivering a copy thereof to the clerk. We conclude that the District Court was entirely correct in its conclusion that service of process was properly made.

■ But, says defendant, the summons issued to the Sheriff of the County where the action was begun was never returned and that, in the absence of such a return, there could be no service in another county. In this respect it relies upon certain provisions of the statutes of Illinois which provide that corporations may be served by service of process upon their authorized agent. We think that this fact is immaterial for the reason that the legislature of Illinois has provided two means by which a foreign corporation may be served. By virtue of the provisions upon which defendant relies, it may be served as a domestic corporation; it may also be served in the manner followed in this case, that is, by service upon the Secretary of State, this latter, by virtue of a direct provision to that effect. The two methods are optionally alternative in character and plaintiffs were under no necessity to follow both. They were at liberty to follow either one of the two. Such is the law of Illinois. In Hall v. Metropolitan Life Ins. Co., 298 Ill.App. 83, 18 N.E.2d 388, 391, in discussing the two methods, the court said: "The latter section authorizes service of process on a corporation by leaving a copy thereof with any officer or agent of the corporation found in the county. When the two sections are considered together it is obvious that the act, in providing for service on a foreign corporation through a designated agent or the Secretary of State, is permissive and not restrictive. A mere reading of the section demonstrates that such was the clear intention of the legislature. Therefore, a foreign corporation may be served in the same manner as a domestic corporation, and may also be served as provided in sec. 157.111, ch. 32." See also Phillips et al. v. Interstate Motor Freight System, D.C., 45 F.Supp. 1. Furthermore the statute expressly provides, Section 157.-111, Chapter 32, that: "Nothing herein contained shall limit or affect the right to serve any process, notice, or demand required or permitted by law to be served upon a foreign corporation in any other manner now or hereafter permitted by law." We conclude that the District Court properly overruled the motion to quash the service of process.

■ Defendant's contention that the District Court erred in failing to direct a verdict in its behalf presents a question as to the sufficiency of the evidence to sustain the verdict. Plaintiffs offered evidence that in the manufacture of fertilizer, chiefly from organic matter, defendants permitted a steady flow of unused organic material from its cooker of such volume that a three inch pipe was necessary to carry it away; that this material had a rotten, nauseating odor; that it overflowed from the pond in which it was deposited on defendant's premises and ran into a ditch and thence into the lake adjoining plaintiffs' residences, the junction of the ditch and the lake being only some 600 feet from the residences; that the lake at the junction and beyond had become filled with debris from the pond

to a depth of from four to five feet; that maggots washed into the lake; that livestock refused to drink the water although they had done so before; that livestock and chickens were covered with black material from the lake so that at times it was necessary to wash them; that plaintiffs' children were nauseated from the odor; that windows were required to be kept closed at night to prevent the smell from coming in; that fish died in the lake by the hundred; that, by reason of the aforesaid conditions, one plaintiff's poultry flock was cut from 600 to 150; that the odor was not such as comes from stagnant water but carried from the plant for a distance of from three to seven miles; that the death of the fish in the lake was caused by conditions created by defendant and that other damaging facts, which we think it unnecessary to reiterate, existed, all the result of defendant's operations. Defendant controverted some if not all of this evidence. The jury heard and saw the witnesses. Clearly there is sufficient evidence to support the jury's verdict.

■ But, says defendant, plaintiffs cannot recover for disagreeable odors created as an incident to the operation of an industrial plant, grounding its argument upon Gardner v. International Shoe Company, 386 Ill. 418, 54 N.E.2d 482. We have examined the Gardner case and find that the court there was concerned only with incidental odors from an industrial plant located in an industrial community. In the present case we are concerned with an agricultural community. Defendant's plant was far removed from any industrial community and not only were there disagreeable odors but the stream was polluted by defendant's acts so that livestock could not drink the water, fish were killed and plaintiffs were hindered and damaged in carrying on their agricultural pursuits. The facts submitted by plaintiffs go far beyond the situation before the court in the Gardner case and bring it within the Illinois decisions in Eckart et al. v. City of Belleville, 294 Ill.App. 144, 13 N.E.2d 641; Wineland v. Huber, 275 Ill.App. 264 and Cook v. City of Du Quoin, 256 Ill.App. 452. Indeed, the Supreme Court, in the Gardner case, distinguished the last mentioned decisions as cases in which an industrial community was not involved and presenting conditions that were painful, unhealthy, noxious, poisonous and destructive of human, animal and vegetable life. We think there is no question that plaintiffs' proof, believed as it was by the jury, was sufficient to bring the case within the other cases mentioned.

■ We think the court did not err in permitting plaintiffs to show the prior conditions. Such evidence has been approved by the Supreme Court of Illinois in Fairbank Co. v. Nicolai, 167 Ill. 242, 47 N.E. 360.

■ Defendant complains further that the court improperly limited the effect of an instrument it offered in evidence. On February 5, 1935, more than five years prior to the period involved in the trial, one of the plaintiffs executed a written statement that at that time there was nothing improper in the operation of the plant in so far as that plaintiff was concerned. Defendant offered the exhibit and the court cautioned the jury that it was received for such bearing as it had upon the testimony which had been given by the plaintiff in connection with the time when the conditions complained of began to arise. So when it was received in evidence, the only limitation the court made was that the jury might consider its bearing upon the credibility of this particular plaintiff, in view of his statements as to the subsequent conditions. This we think was proper. At any rate, defendant made no objection that the evidence was in any way improperly limited.

The judgment of the District Court is affirmed.