## * HERBERT v. WAGG *et al.*

No. 269.    Opinion Filed November 16, 1910.

Rehearing Denied January 3. 1911.

1.    APPEAL AND ERROR—Stay of Proceedings in Trial Court—Independent Matters. Matters independent of and distinct from those involved in an appeal are not thereby taken from the jurisdiction of the trial court but remain under its control, notwithstanding the loss of jurisdiction over the particular question appealed.

2.    APPEAL AND ERROR—Separate Trials for Defendants—Discretion of Court. It is within the discretion of a trial court to allow separate trials to the several defendants in an action, or to refuse the same; and its ruling upon the subject will never be reversed unless it can be clearly seen that the trial court abused its discretion.

3.    APPEAL AND ERROR—Independent Matters—Retention of Jurisdiction in Trial Court. H brought an action the object of which was to secure the cancellation of a deed executed to W. The land embraced therein subsequent to the execution and delivery of the deed had been by W platted into blocks and lots and sold to a large number of purchasers, who claimed the same as innocent holders for value and without notice. These lot-holders H joined as defendants in the action with W. On a separate trial awarded by the court to H and W, decree was entered finding the deed involved void as to H, whereupon W gave a supersedeas bond and appealed. After said appeal was perfected, involving the question of the validity of the deed between H and W. the court submitted the remaining issues of the cause, including an accounting and the question of whether the lot-holders were innocent purchasers for value and without notice, to referees to take the evidence and report the same with their findings of fact and conclusions of law. Held, that the appeal taken by W did not remove the trial court's jurisdiction thereof, and that the reference for the purpose mentioned was not error.

4.    APPEAL AND ERROR—Pleading—Definiteness — Change of Theory. A party bringing an action is required to frame his pleading in accord with some definite, certain theory, and the relief to which he claims to be entitled must be in accord therewith; on appeal he is bound by the position and theory assumed and on which the case was heard in the trial court.

5.    ELECTION OF REMEDIES—Effect—Change of Theory. Where the law gives several means of redress or kinds of relief. predi-

* Appealed to the Supreme Court of the United States.

cated on conflicting theories, an election of one, with knowledge, operates as a bar to the subsequent change to, or adoption of, any other.

6. **SAME—Case.** H, who brought an action to secure the cancellation of a deed on the ground that the same was procured by fraud and who prayed an accounting with her grantee for moneys received for lots sold from the land embraced, cannot, at the conclusion of the trial had thereon, or on appeal, abandon that theory and insist that the deed be deemed and held to be a mortgage and recover the title to the lots from the parties held to be innocent purchasers for value and without notice.

7. **HOMESTEAD—Title in Wife—Conveyance.** Prior to the act of March 15, 1905 (Session Laws of Oklahoma, 1905, p. 255, ch. 18), the title to a homestead was in the husband as the head of the family. If title to property occupied by the family was in the wife, she could convey it without the joinder of the husband in the deed, for the reason that the same did not become impressed with the character of a homestead.

8. **VENDOR AND PURCHASER—Notice of Adverse Rights—Duty of Inquiry.** One who purchases land with knowledge of such facts as would put a prudent man upon inquiry, which, if prosecuted with ordinary diligence, would lead to actual notice of rights claimed adversely to his vendor, is guilty of bad faith if he neglects to make such inquiry, and is chargeable with the "actual notice" he would have received; but no bad faith or notice can be imputed to a purchaser where the evidence discloses that, had inquiry been made, no knowledge or notice would have been actually received.

9. **ACKNOWLEDGMENT—Deeds by Attorney in Fact.** Deeds executed by an attorney in fact should be acknowledged as the deed of the principal rather than that of the agent.

(Syllabus by the Court.)

*Error from District Court, Pawnee County; Bayard T. Hainer, Judge.*

Action by Mary B. Herbert against S. R. Wagg and others. From a judgment in favor of certain defendants, the plaintiff brings error. Affirmed.

*E. M. Clark, Burford & Burford,* and *Dale, Bierer & Hegler,* for plaintiff in error.

*William Blake, Victor O. Johnson, P. J. O'Shea,* and *Louis S. Wilson,* for defendants in error.

Copies of briefs did not reach the reporter.

DUNN, C. J.   This case presents error from the district
court of Pawnee county.   The action was originally begun on
June 13, 1903, by W. H. Herbert and Mary B. Herbert, as plain-
tiffs, against S. R. Wagg, Leroy M. Brown, and approximately
sixty-five other defendants.   The object and purpose of the suit
was to secure the cancellation of a warranty deed executed by
Mary B. Herbert, on the 20th day of March, 1901, acknowledged
May 28, 1901, and filed for record May 31, 1901, for eighty acres
of land lying in Pawnee county, Oklahoma, near the town of
Cleveland.   A second amended petition was filed in the case and
on the issues framed the trial was had.   After taking the deed
above referred to from the plaintiff, Mary B. Herbert, the de-
fendant Wagg platted the land into lots and blocks, and the bal-
ance of the defendants in the case are purchasers of lots therein.
The case between the plaintiff and S. R. Wagg to determine the
question of the validity of the deed to the property involved was
tried first, and a decree rendered thereon by the trial court hold-
ing it to be a mortgage securing certain moneys previously loaned
by Wagg to his grantor and her husband.   The issues as to the
other defendants, involving the question of whether they were
*bona fide* holders, for value without notice, of the lots which they
had purchased, were not tried at the time of the trial of the question
of the validity of the deed, but an order was made by the court
assigning the trial of these issues to referees.   In the meantime,
however, Wagg, against whom judgment had been rendered, had
given a supersedeas bond and appealed his case to the Supreme
Court of the territory of Oklahoma, which affirmed the judg-
ment of the trial court in an opinion reported in 19 Okla. Rep.
525, 92 Pac. 250.   Thereafter Wagg appealed the case to the
Supreme Court of the United States, which in a decision (215
U. S. 546) affirmed the conclusion reached by the lower courts,
but decreed the cancellation of the deed in question.   The second
amended petition and the answer of S. R. Wagg and other ma-
terial facts involved are set out at length in the opinion of the
Supreme Court of the territory of Oklahoma, and hence we will

not incorporate the same into this opinion further than will be necessary for the discussion of the question now before us. The issues arising on the answer of the lot claimants were heard before referees appointed, and resulted in a judgment rendered on the 4th of October, 1907, in which all of the defendants in error in this appeal were held to have taken title to their lots in good faith, for value and without notice of the rights or equities of plaintiff in error, and a finding as a result of the account had that S. R. Wagg was indebted to the plaintiff in error in the sum of $2,794.23, with interest from the 12th day of January, 1903, which was to be credited with the amount due on the original mortgage, with interest in accordance with its terms. It was ordered, however, that this portion of the decree await the mandate from the Supreme Court on the judgment from which Wagg had appealed. This statement is deemed sufficient for the purpose of disclosing the present situation of the case.

The question first presented to us grows out of the separate trial awarded the lot claimants, and which took place after Wagg had taken his appeal and filed supersedeas on the judgment against him. It is the claim and contention of plaintiff in error that, on Wagg taking an appeal and giving a supersedeas bond, all further proceedings in the trial court were thereby suspended and that it was without power or jurisdiction to try the remaining issues in the case, notwithstanding the fact that they were collateral and independent matters to the judgment from which an appeal had been taken and the enforcement of which had been stayed. There can be no doubt of the correctness of the rule laid down in the case of *In re Epley,* 10 Okla. 631, which is invoked by counsel for plaintiff in error, to the effect that when a case is brought within the jurisdiction of the appellate tribunal, it is taken entirely out of the inferior court, the appeal necessarily removing the matter in controversy to the higher tribunal for review. But an appeal which is taken removes from the jurisdiction of the lower court only the matter involved in the judgment or order from which the appeal is taken. Other independent matters and collateral pro-

ceedings are not covered by the appeal, and the lower court retains its jurisdiction over them. The general rule applying in such cases is stated by Judge Elliott in his work on Appellate Procedure, sec. 545, as follows:

"Matters independent of and distinct from the questions involved in the appeal are not taken from the jurisdiction of the trial court. Such matters as the appeal does not cover are purely collateral or supplemental, lying outside of the issues framed in the case, or arising subsequent to the delivery of the judgment from which the appeal is prosecuted. The general rule that a case leaves the jurisdiction of the trial court when an appeal is perfected is not impinged by holding that purely collateral or supplemental matters are left under the control of the trial court, notwithstanding the loss of jurisdiction over the case taken to the higher court."

The rule there laid down finds support in many authorities, among which we may note the following: 4 Enc. L. & P. 251, n. 21; 2 Cyc., p. 978; *Hayes v. Frey et al.*, 54 Wis. 503, 11 N. W. 695; *Kemp et al. v. National Bank of the Republic of New York*, 109 Fed. 48; *Line et al. v. State ex rel. Louder*, 131 Ind. 468, 30 N. E. 703; *Burnett v. Jackson, ante;* also annotated case of *Gray v. Ames*, 5 Am. & Eng. Ann. Cases, 174.

Furthermore, it is to be noted that the case which primarily presented itself to the court was a contest between Mrs. Herbert and Wagg. If Wagg prevailed in that action, it would have been an end to all controversy, and no one could know prior to a trial that he would not be successful. With this contingency staring this court in the face, it determined to ascertain first whether or not Mrs. Herbert could sustain her claims, for there would be no necessity for an accounting or any further hearing from the multitudinous defendants if she did not. To ascertain in a brief hearing and a limited record this important preliminary fact, was an act not only in the discretion of the court, but one of manifest prudence. The court doubtless foresaw the magnitude of the trial which would follow an investigation of the rights of all of the different lot-claimants, and, in order that such investigation might be based upon at least a probability of necessity,

called first for hearing the issue between the plaintiff and the principal defendant, Wagg, and determined as between these parties the fact which would render at least approximately certain the necessity of litigating the rights of the other defendants. The hearing and determination of this fact was uncomplicated and not prolonged by the issues arising from the answers of the lot-claimants. An incidental order in the journal entry of the decree which was rendered in the Wagg case recited the agreement by counsel on a referee to take the testimony for the purpose of determining the accounting demanded and also the rights of the other defendants claiming an interest in the lots involved, to find what lots were sold to *bona fide* purchasers prior to the date the suit was instituted and to find what lots were not sold and fixing the right to intervene in all parties who had not been named as defendants and who claimed an interest in the property. This order of reference and fixing its scope could have been made independently of the decree rendered, and its nature was unchanged by inserting therein. It might have been made a separate order, and a recitation of it in the journal entry embodying the judgment from which Wagg appealed in no wise changed its real status or made it appealable by Wagg. Plaintiff, who is now complaining of the carrying out of this order, at the time it was made, made no objection and took no exception to it. Wagg, who took an appeal from the judgment, is not now complaining of the accounting, nor of the report of the referees. Hence, the proceedings taken under the order were and are with the virtual acquiescence of all parties concerned.

Section 5787, Comp. Laws of Oklahoma, 1909, provides that, "A separate trial between the plaintiff and any or all of several defendants may be allowed by the court, whenever justice will be thereby promoted." Action under the terms of this statute by the trial court is a matter within its discretion, and it will never be reversed on appeal unless it can be clearly seen that such discretion was abused. *Hoskinson v. Bagby*, 46 Kan. 758; *Rice &*

*Floyd v. Hodge Bros.,* 26 Kan. 164; *Gregg et al. v. Berkshire,* 10 Kan. App. 579, 62 Pac. 550.

From the preceding discussion, it will be seen that, in the judgment of this court, there was no abuse of discretion on the part of the trial court in granting a separate hearing to the defendant Wagg. The record which was made on the trial and which is now before us, including the briefs, approximates twenty-seven hundred pages of typewritten and printed matter, all of which, had it been taken and made at the time of the trial between plaintiff and Wagg, would have been entirely superfluous, worthless, and wasted, had Wagg finally prevailed. So that, it was in the exercise of a sound and commendable discretion when the court granted Wagg a separate trial and determined first the necessity of investigating the rights of the other defendants.

Furthermore, under the relief demanded in plaintiff's petition, the innocent holders of the lots were unconcerned as to the outcome of the contest between Mrs. Herbert and Wagg, for if Wagg prevailed, their titles would have been undisturbed; if Wagg lost, and they were held to be *bona fide* holders, he alone was required to respond to Mrs. Herbert for the amount which he had or should have received for the property they had bought. The thing which was of importance to them and on which they were entitled to have an early adjudication was the question of whether they were to be held innocent holders for value and without notice, and it would have been a marked injustice to have required them to await the slow, tedious course of Wagg's appeal through the Supreme Court of the territory of Oklahoma and the Supreme Court of the United States before they were to have an opportunity to establish by judgment of court that the titles to their property were free, clear, and unclouded. Certainly, considering all of these conditions, our system of administering justice is not so lame as to be ineffective to give them a speedy hearing. It therefore follows from the foregoing consideration that the trial court retained jurisdiction to try and determine the question submitted on this appeal.

In the case of *Toledo, St. Louis & Kansas City R. R. Co. v. Levy et al.,* 127 Ind. 168, the Supreme Court of Indiana said:

"A complaint cannot be made elastic so as to bend to the changing views of counsel as the cause proceeds. It must proceed to the end upon the theory upon which it is constructed."

See, also, to the some effect, *City of Logansport v. Uhl et al.,* 99 Ind. 531; and *Over et al. v. Shannon et al.,* 91 Ind. 99.

It is fundamental that when a party, feeling himself aggrieved, brings an action in court for relief, he must frame his pleading in accord with some definite, certain theory, and the prayer and the relief to which he claims to be entitled must be responsive thereto. 21 Ency. P. & P. 649, and cases cited under notes 1 and 2. And parties on appeal from any judgment rendered in an action are bound in the appellate court by the position and theories assumed by them in the trial court. 4 Ency. L. & P. 316; *Tomlinson, Admr. v. Ellison,* 104 Mo. 105; *Geneva and Waterloo Ry. Co. v. N. Y. Central & Hudson River R. R. Co.,* 163 N. Y. 228; *Graham v. Nowlin,* 54 Ind. 389; *Detroit Motor Co. v. Third Nat. Bank,* 111 Mich. 407; *Davis et al. v. Jacoby,* 54 Minn. 144; *Morrison et al. v. Atkinson et al.,* 8 Am. & Eng. Ann. Cases, 486 (Okla.) ; *Harris v. First Nat. Bank of Bokchito,* 21 Okla. 189, 95 Pac. 781. And this is true even though the theory upon which they proceeded is an erronoeus one, yet the judgment or decree rendered will not be reversed if correct according to the theory adopted on the trial. 21 Ency. P. & P. 668, and cases cited under n. 4; *Cunningham v. East River Electric Light Co.,* 60 N. Y. Superior Ct. Rep. 282; *Moquit et al. v. Chapel,* 62 Minn. 258, 64 N. W. 567; *Lockwood v. Quackenbush et al.,* 83 N. Y. 607. The general rule is that when the law gives several means of redress or kinds of relief, predicated on conflicting theories, the election of one of them operates as a bar to the subsequent adoption of others. 15 Cyc. 259; *Missouri Pacific Ry. Co. et al. v. Henrie,* 63 Kan. 330, 65 Pac. 665; *Blaker v. Morse,* 60 Kan. 24, 55 Pac. 274; *New York, L. E. & W. R. Co. v. Estill,* 147 U. S. 591, 37 Law Ed. 292; *Conrow et al. v. Little et al.,*

115 N. Y. 387, 22 N. E. 346; *Terry et al. v. Munger*, 121 N. Y. 161, 24 N. E. 272. And the foregoing rules apply to the measure of damages or relief to which a party supposes himself entitled. *N. K. Fairbank Co. v. Nicolai*, 167 Ill. 242; *Cleveland C., C. & St. L. Ry. Co. v. Stephens*, 74 Ill. App. 586; *Leavenworth, Northern & Southern Ry. Co. v. Curtain et al.*, 51 Kan. 432.

It will therefore be seen that the theory of a case and the remedy prayed, as fixed in the trial court, control in the appellate court when a review of the judgment or decree rendered is sought; that the election of the remedy having been once made and acted on, is final. This appeal is prosecuted by Mrs. Herbert, plaintiff in error, to secure a reversal of the judgment rendered in the trial court for the purpose of enabling her to repay to the defendants the several amounts which they have paid for their lots, with interest thereon, along with such other claims and liens as they may have or hold thereon, and recover title to the lots. It is the contention of counsel for defendants in error that this insistence in this court on the part of Mrs. Herbert is a departure from the theory of the case, as the same is disclosed by her second amended petition and the course and conduct of the trial adopted and acceded to by all parties. In this contention of counsel for defendants in error we concur. The second amended petition filed by Mrs. Herbert contains a prayer as follows:

"Wherefore plaintiff prays judgment that the said deed referred to as Exhibit E (this being the deed taken by Wagg and known throughout the case as the settlement deed and which was by the Supreme Court of the United States in the case of *Herbert v. Wagg, supra*, canceled) be canceled and held for naught; and that it be adjudged and decreed by this court that the deed referred to as Exhibit C be held to be a part and parcel of the said mortgage Exhibit B. And that the court determine the amount due as principal and interest on said mortgage from the plaintiff to the defendant. And that the court proceed to determine the amount in crops, produce, rents, use and occupation which the said Wagg, defendant herein, has taken or caused to be taken from this plaintiff and from said eighty acres of land or any part thereof, and that the same be charged to said S. R. Wagg

and credited to this plaintiff. And that the court, after the trial of the issues between this plaintiff and the other defendants herein, *also take an accounting and determine the amount of money which the said S. R. Wagg has received or should have received in money, notes, and property for the sale or trade of lots to innocent purchasers without notice of the rights of this plaintiff after the same shall have been determined by this court under the issues formed or to be formed between plaintiff and defendants herein,* upon the portion platted by him of the said eighty acres; that is to say, of the fifty-five acres of land; and that the same be charged to the said S. R. Wagg, defendant herein, and after the defendant S. R. Wagg is given credit for the balance due on said note and mortgage and taxes, that this plaintiff be given judgment against the said S. R. Wagg for the balance due this plaintiff on said account. *And this plaintiff further prays judgment that she be restored to the possession of all the remainder of said land* and that defendant S. R. Wagg and all persons holding by, through, or under him and against all the defendants herein and their alleged transferees, *excepting such as shall by this court be decreed to be innocent purchasers thereof in good faith and for a good and sufficient consideration."*

In the foregoing portion of the prayer to her petition, Mrs. Herbert set forth definitely the relief to which she supposed herself entitled, and therein elected to take a judgment against Wagg for the proceeds of the lots held by innocent purchasers. The decree which was rendered in the action tried between Mrs. Herbert and Wagg contained an order "that an accounting be had between said plaintiff, Mary B. Herbert, and defendant, S. R. Wagg, for the purpose of determining the amount of money received by said S. R. Wagg for the lots sold by him and for money received from said property, and in case it is found that said defendant, S. R. Wagg, has received from sale of said property and products of said land a sum in excess of that which is due him under the findings of this court, that judgment be entered in favor of this plaintiff against said defendant, S. R. Wagg." To this order she made no objection and took no exception. On the occasion of the trial beginning May 18, 1905, the court called on plaintiff to announce whether or not she was ready to proceed.

Whereupon Mr. Wrightsman, attorney for some of these defendants, said:

"Just one moment. I want to arise for the purpose of a little information. When this case was tried a little over a year ago, Mr. Clark practically stated that as to the innocent purchasers, as to these people who had deeds at the time the suit was filed no contention would be raised, outside of Mr. Wagg and Mr. Drown, and the gentlemen have intimated that today again. But they don't let loose. Mrs. Herbert, on the witness stand, testified that she gave notice to none except to Mr. Drown and Mr. Wagg, and that these people were innocent purchasers. Now, to simplify matters, if these gentlemen will enter into a stipulation as to these parties having deeds at the time of the commencement of this suit, outside of Mr. Drown and Mr. Wagg, it will simplify this case."

To which Judge Dale, counsel for plaintiff in error, replied:

"I say to counsel now, that *bona fide* purchasers for value, of course we could not prevail against them."

Whereupon counsel for plaintiff stated the case to the jury, in the course of which he read the prayer of the second amended petition which we have quoted above, and said:

"That, if the court please, gives the court our claim in this case. And in reference to these other party defendants, in addition to what has been said, I only wish to add that in the drafting of this petition, and preparing this suit, we deemed it but good practice, and we might say necessary practice, to bring these parties into court, and to have them establish that they had purchased the property in good faith, for a valuable consideration, and the amount they paid for it; that the same might be charged up to Mr. Wagg, and the transaction finally closed. I may say further, that we have been criticized for doing that, but that it was our ideas of good practice, and still are. Now, I believe that gives the court our ideas of the case."

The trial had and the relief administered were in exact accordance with the theory adopted, and in our judgment were in all respects in accord with the rights of the parties. Counsel for plaintiff in error seek in this court to bring themselves within the terms of section 1198, Compiled Laws of Oklahoma, 1909 (Laws 1897, p. 95), which reads as follows:

"Any person purchasing or taking any security against real estate in good faith and without notice from one holding under an instrument purporting to be a conveyance, but intended as security for the payment of money, and which instrument has been duly recorded without any other instrument explanatory thereof, shall be protected to the extent of the purchase price paid or actual outlay occasioned with lawful interest, against all persons except those in actual possession at the time of such purchase or outlay."

A critical scanning of this section discloses that the instrument referred to is one purporting to be a conveyance but intended as security for the payment of money and which has been recorded without any other instrument explanatory thereof. The defendants in this action, it will be remembered, are not holding or claiming under any other instrument than the deed commonly known as the settlement deed, and this instrument no one testifies and no fact established was ever intended as security for the payment of money. It was in fact given, as all testify, for the purpose of cancelling a debt, not of securing one, and on its delivery the mortgage was canceled, and Wagg, as was intended, took title to the property, and on that title made to plaintiff in error a deed to a portion of the land taken. It is true, as stated by counsel, that the trial court, in its decree on the trial of the action between Mrs. Herbert and Wagg, declared this deed to be a mortgage upon the land embraced within it, but to this extent the decree was a departure from the prayer of the petition; for therein plaintiffs specifically prayed that this deed "be canceled and held for naught and that it be adjudged and decreed by this court that the deed referred to as Exhibit C be held to be a part and parcel of said mortgage, Exhibit B," and the Supreme Court of the United States, in reviewing this decree, and the opinion of the Supreme Court of the territory of Oklahoma, of this particular portion of the trial court's decree, said:

"In other words, whatever technical criticism may be made upon the form of the decree, it was in substance a finding and decree that the deed of May, 1901, was void, as having been obtained by the fraudulent conduct of the defendant, and that be-

ing set aside, left the property subject to the lien of the original mortgage given October 24, 1908."

This instrument, therefore, not having been intended as security for the payment of money and the trial and final judgment rendered not having been predicated upon that theory, the relief to be granted does not fall within the provisions of the section of the statute above quoted.

An inspection of the record leaves but little doubt that all parties proceeded in the trial of this cause upon the theory that those parties and their transferees who had taken title from Wagg to lots prior to the inception of this suit were held and regarded as innocent purchasers, and this opinion might well close here except for the insistence on the part of counsel for plaintiff in error that, notwithstanding the theory adopted, still, on account of certain facts, the defendants herein are not entitled to claim as innocent holders. We have examined all the propositions urged in support thereof; they have had our careful consideration, but we do not find that there is merit in any of them; some of them, however, we will notice briefly.

It is first and most strenuously insisted that notice of defective title in Wagg was imparted by the fact that the settlement deed lacked the signature of Mrs. Herbert's husband. The record discloses that Mrs. Herbert's husband took title from the government of the United States May 9, 1896, and that on July 2, 1896, he made to her a warranty deed to the entire tract for the consideration of five hundred dollars, and that the same was filed for record on the same day. The land was occupied by the family as a home, but under the law as it existed in the territory of Oklahoma prior to the passage of the act of March 15, 1905, (Session Laws 1905, p. 255, ch. 18) the title or ownership to the property used by the family as a home, to acquire the status of a homestead, was required to be in the husband. If it was in the wife, it was not a homestead, though occupied by the family, and in such a case title when in the wife could be conveyed without the joinder of the husband in the deed. *McGinnis v. Wood et al.*,

4 Okla. 499, 47 Pac. 492; *Cordray v. Morgan,* 21 Okla. 574, 95 Pac. 561. Furthermore, plaintiff, in her petition upon which the case was tried, asserted that she was the owner of the land involved, and, while pleading that the same was occupied and claimed as a home, there was no claim made that the deed executed by her was invalid because of the lack of her husband's signature.

It is also insisted that the condition of the records showing the title of the land, in the office of the register of deeds, was such as to have put intending purchasers upon inquiry; that the recording of the escrow deed, followed subsequently by the recording of the settlement deed, all being transactions conducted between a mortgagor and mortgagee, and all disclosed by the record, created a condition which precluded the defendants in error from taking as innocent purchasers. Conceding these facts to be true, and accepting them with all the consequences insisted on by counsel, yet, in our judgment, it would not establish the proposition which they urge. The condition of the record in itself disclosed nothing fraudulent; the most that is contended for it is that it should have prompted inquiry, and that the lot claimants were bound by the things which they would have learned had they made such inquiry. Viewing it, then, from this standpoint, we find that the land was platted into blocks and lots, August 14, 1901, and that lot claimants' rights attached between that date and the time when the action was filed. Mrs. Herbert testified that she did not know of any right which she possessed in and to this land until she talked with her lawyer in the spring or early summer of 1903, "just previous to filing this suit," all of which being true, any inquiry made on the part of the lot claimants, prompted by the condition of the records, would have resulted in no information whatsoever, for Mrs. Herbert herself had none that she could give. She may have believed, and doubtless did, that she had been overreached, but that she had a remedy was unknown to her, and necessarily it was likewise unknown that she would ever pursue it. The fraud upon which was predicated her right to relief was not evidenced by the record, but arose from

personal transactions between her and her grantee. Hence, we concur in the conclusion reached by the referee and the trial court on this point. The rule adopted by this court on this question is laid down in the case of *Cooper v. Flesner et al.*, 24 Okla. 47, 103 Pac. 1016, as follows:

"One who purchases land with knowledge of such facts as would put a prudent man upon inquiry, which, if prosecuted with ordinary diligence, would lead to actual notice of rights claimed adversely to his vendor, is guilty of bad faith if he neglects to make such inquiry, and is chargeable with the 'actual notice' he would have received."

As we have seen, however, even if the record was sufficient to have put the lot purchasers upon inquiry, and had they then prosecuted the same with diligence, it would have led to no actual notice of any rights claimed adversely to their grantor, for the reason, as stated, Mrs. Herbert did not herself know of her rights.

A point is also sought to be made upon the acknowledgments to the different deeds executed by Drown as attorney in fact for Wagg. It is insisted that Drown should have acknowledged them as his own act and deed instead of the deed of his principal. In this counsel are in error, the rule being that the instrument should be acknowledged as the deed of the principal, rather than that of the agent who acts for him. Brewster on Conveyancing, sec. 294; Martindale on Abstracts of Title, sec. 61;; 1 Devlin on Deeds, sec. 468.

A careful review of the claims made by the parties, as shown in their exhaustive briefs, and the law applicable to the facts leads us to the conclusion that the theory adopted in the second amended petition was the correct one for the administration of relief between the parties; that it was heard thereon, and that the trial and judgment has resulted in substantial justice. We have carefully noted all of the grounds counsel urge for reversal, but have found no substantial error in the proceeding, and the judgment of the trial court is, accordingly, affirmed.

All the Justices concur.