**GUSTIN v. CARSHALL et al.**

No. 20729. Opinion Filed April 5, 1932.

A. K. Little and T. T. Varner, for plaintiff in error.

C. R. Hunt and C. T. Bennett, for defendants in error.

ANDREWS, J. This is an appeal from a judgment of the district court of Le Flore county in favor of the defendants in error, cross-petitioners in the trial court, against the plaintiff in error, the plaintiff in the trial court. Hereinafter the plaintiff in error will be referred to as the plaintiff and the defendants in error as the cross-petitioners.

The plaintiff commenced an action in the district court of Le Flore county to recover a judgment on certain promissory notes and to foreclose a real estate mortgage given as security therefor. The cross-petitioners were made defendants therein, and with reference to them it was alleged that they claimed some right, title, and interest in or to the real estate involved in the action. Judgment was rendered in favor of the plaintiff as prayed for by him, except as to the cross-petitioners. There is no question presented as to that judgment. The issue between the plaintiff and the cross-petitioners was continued and tried at a later date. From the judgment rendered on that issue, an appeal was taken to this court.

The cross-petitioners alleged ownership of an interest in the property and the right to the possession of the same. They alleged that the cross-petitioner Simon Carshall was the only son of Jimey Carshall, and that Jimey Carshall was the only son of Simon Carshall, Choctaw No. 8703, the allottee of the land in question. They alleged that Jimey Carshall died prior to the death of the allottee, Simon Carshall, and about the year 1912. The plaintiff filed a motion in which he asked the court to require the cross-petitioners to make their cross-petition more definite and certain in five particulars. The trial court sustained that motion as to the first three of them and overruled it as to the fourth and fifth. Those were as follows:

"Fourth: That they state when, where, and by whom the allottee, Simon Carshall, and the mother of Jimey Carshall were married.

"Fifth: That they state whether such marriage was a ceremonial marriage, a common-law marriage, or a marriage according to the Indian custom."

The plaintiff answered the cross-petition and specifically denied that the allottee,

Simon Carshall, and the mother, Jimey Carshall, were ever married or were ever husband and wife. The cross-petitioners did not reply thereto. When the issue made by the pleadings came on for trial, the attorney for the cross-petitioners made an opening statement, in which, among other things, he said:

"I think the proof will show that Jimmie Carshall was an illegitimate son of Simon Carshall, his mother's Indian name was Seanna, and Simon Carshall, the intervener herein is the legitimate son of Jimmie Carshall. The question of law that will be involved in the case is, Does an illegitimate child inherit from the father? I think that is well answered where he has been adopted, and the question is what constitutes an adoption. The question, Does the legitimate child of an illegitimate child inherit when the illegitimate child died before the heir. I think the proof will show that Jimmie Carshall died some 12 years prior to his father and was survived by Simon Carshall. I think the proof will show on the part of the intervener that Simon Carshall in his lifetime acknowledged Jimmie Carshall as his son; that Jimmie Carshall came and lived with him in his home as his son for a short time and after his death that Simon Carshall took Sim Carshall here into his home as his grandson and I think the proof on the part of the intervener will be such as to establish an adoption under the statutes of this state and the decisions of the courts, and if we prove that Jimmie Carshall was adopted by Simon Carshall and Simon Carshall here is the legitimate son of Jimmie Carshall we think we will be entitled to a judgment in this case."

A trial was had, and at its conclusion the plaintiff's motion for judgment was overruled and the trial judge took the cause under advisement.

The evidence clearly shows that Jimey Carshall was the illegitimate son of Simon Carshall, the allottee, and Seanna Anderson. There was nothing therein to show a marriage of any kind or character or an adoption of Jimey Carshall by Simon Carshall. A judgment should have been rendered for the plaintiff.

While the trial court had the cause under advisement, the cross-petitioners filed a motion to reopen the case and to permit them to put on further and other evidence. They alleged therein that they had other material evidence which they could not, with reasonable diligence, have produced at the hearing. The trial court permitted the cause to be reopened and required the cross-petitioners to "set out by way of amendment of motion the matters and things to which witnesses will testify to on further hear-

ing." An amendment to the motion to reopen was filed by the cross-petitioners in which they stated:

"(1) The intervener expects to prove that Carshall and Lucy Yota agreed to become man and wife, and that they thereupon lived together as man and wife, and while so cohabiting together as such begat Jimmy Carshall, that they introduced each other as man and wife, and was so received and treated, and that it was and had been the custom, that where a man and woman lived together as such man and wife, that they were deemed and received as man and wife.

"(2) The intervener expects to also prove that at the time that Simon Carshall and Lucy Yota lived together, that there was no Indian statute on legitimation, and that where a man and woman lived together and had a child or children while they so lived together as man and wife and was received as such, that such child or children were deemed and received and treated as legitimate, and that such was the custom of Indians."

When the cause again came on for hearing, the court permitted the cross-petitioners to strike the opening statement of counsel made at the former hearing. The plaintiff objected thereto for the reason, among others, that he had filed a motion to require the cross-petitioners to make their petition more definite and certain by requiring them to set out therein whether or not they were claiming by reason of a common-law marriage, a statutory marriage, or a marriage according to Indian custom, and that the trial court had overruled that motion. His objection was overruled. There was no amendment of the pleadings. Although the cross-petitioners had contended at the first hearing and had shown by the evidence that Jimey Carshall was the illegitimate son of the allottee; although they had then contended that Jimey Carshall had been adopted by the allottee and had failed to show an adoption; although they had resisted the motion of the plaintiff to require them to state in their cross-petition whether they relied on a ceremonial marriage, a common-law marriage, or a marriage by Indian custom, and although the court had denied that motion, without amending their pleading, they asked the court and were granted permission to strike the opening statement made by them at the first hearing. They then proceeded to submit evidence on the theory of a marriage according to Indian custom.

They herein contend that their amendment to their motion to reopen the cause was an amendment of the pleading, and they say that they therein "alleged" certain facts. The only allegation of fact therein was that

they expected to prove something. It was a mere statement of what they expected to prove. If it was their intention to rely upon a custom of the Choctaw Indians, it was their duty to plead those customs in order that the plaintiff might have an opportunity to deny the allegations, and in order that an issue with reference thereto might be made by the pleading. As was said in Herbert v. Wagg, 27 Okla. 674, 117 P. 209, a party bringing an action is required to frame his pleading in accord with some definite, certain theory, and the relief to which he claims to be entitled must be in accord therewith. The same rule applies to the opening statement at the trial of a cause. A litigant may not change from one theory to another over the objection of his opponent, especially without amending the pleadings. An opponent has the right to rely on a trial of the issues as made by the pleadings. Such is the statement of this court in Inc. Town of Comanche v. Works, 69 Okla. 244, 172 P. 60. In Grentner v. Fehrenschield (Kan.) 68 P. 619, that court said:

"A plaintiff must frame his pleadings upon a distinct theory, and cannot, against the objection of defendant, obtain relief upon a theory essentially different from the one alleged."

In Wilhite v. Dieball (Kan.) 145 P. 854, that court quoted from Stewart v. Balderston, 10 Kan. 131, wherein it was said:

"And where the adverse party then refuses to amend his defective pleading, resists the motions to have it amended, and has the motions overruled by the court, the most rigid rule of the common law should prevail. No statement of fact in the pleading, which the motions reached, should then be taken as true unless well pleaded: and, if any such statement would bear different constructions, the party demurring should be allowed to adopt any one of such constructions which he should choose. * * * After a party has received full notice that his pleading is defective in some particular, and has been asked to correct it, it is his fault if it still remains defective in such particular, and he is the one who should suffer on account of such defective pleading, and not the other party."

The cross-petitioners say that, when they established that Jimey Carshall was the son of the allottee, the law presumed that he was the legitimate son, and the duty of proving that he was not legitimate was cast upon the plaintiff. Such is not the law of this state. It was so stated in Aldrich v. Hinds, 110 Okla. 53, 235 P. 1100, and Id., 116 Okla. 300, 245 P. 854, wherein this court held:

"Prior to the extension of the Arkansas law over the Indian Territory, the common law had no application to marriages between members of any of the Five Civilized Tribes, but all such marriages were regulated by tribal laws and customs, and all such marriages and the legitimacy of all children born of such marriages were recognized by Congress by Act May 2, 1890."

"Therefore, when the validity of any such marriage prior to 1890 is relied on to establish a right of inheritance, it is incumbent on the person relying thereon, to plead and prove the laws and customs of the tribe relating to marriage and the existence of a marriage in fact. The strong presumption which the law indulges in favor of marriage must be supported by some proof of an actual marriage, either regular or irregular, lawful or customary, as distinguished from the common-law relation."

The trial court found that there was no ceremonial marriage and no common-law marriage, and the judgment of the trial court thereon is sustained by the evidence. There was no evidence of an adoption, and the cross-petitioners are not now relying on an adoption. The trial court found that there was a marriage according to the custom of the tribe. Such a finding is warranted only after proof of the existence and character of the custom, and before proof of a custom may be made there must be an allegation of the existence of the custom. Aldrich v. Hinds, supra. There is no such allegation in the pleadings in this case.

There was nothing in the Act of Congress of May 2, 1890, intended to legitimatize all children. That act relates to the progeny of "marriages heretofore contracted under the laws or tribal customs of any Indian Nation now located in the Indian Territory." Notwithstanding the error of the trial court in permitting the introduction of evidence not warranted under the issues made by the pleadings in the cause, that there may be a final determination of the contentions herein made, we have reviewed the evidence for the purpose of determining whether or not a custom of the Choctaw Tribe of Indians as to marriage was proved, and, if so, whether or not there was a marriage in accordance with that custom, if any.

The record shows that the marriage occurred prior to 1883. The record does not show a marriage in accordance with any custom shown to have existed at that time. Proctor v. Foster, 107 Okla. 95, 230 P. 753; Davis v. Reeder, 102 Okla. 106, 226 P. 880; Horrigan v. Gibson, 87 Okla. 1, 206 P. 219, and Fender v. Segro, 41 Okla. 318, 137 P. 103. The mother of Jimey Carshall, a witness for the cross-petitioners, testified as follows:

"Q. How come you to leave Simon, Lucy? A. He told me he would marry me. Q. And then he wouldn't marry you? A. We never married; I wouldn't live with a man that wouldn't marry me. Q. How did they get married then, Lucy? A. When they wanted to get married at that time they just marry and I asked her then how—Q. Ask her if they had a preacher? A. Yes, sometimes and sometimes before the court. Q. Did you and Simon go and get married before a preacher or court? A. No, sir. Q. Didn't ever get married? A. We never did marry. Q. Is that the reason you left Simon, because he wouldn't marry you? A. That is why I left him."

—And:

"Q. Now, Lucy, you and Simon had a talk and agreed to be man and wife? A. We had a talk and I believed he would marry me and I lived with him. Q. And following that agreement, did you go and live with Simon? A. I lived with him and when he said he wasn't going to marry me, I left him."

A marriage cannot be established by such testimony. Cohabitation and reputation do not constitute marriage. They are only evidence of marriage. Proctor v. Foster, supra; Davis v. Reeder, supra; Horrigan v. Gibson, supra, and Fender v. Segro, supra. In the latter case, this court held:

"Cohabitation and reputation do not constitute marriage, but only evidence tending to raise a presumption of marriage from circumstances. In any case the cohabitation must not be meretricious, but matrimonial, to raise the presumption.

"Such presumption of marriage does not arise where it is not shown that there was a recogition of the marriage relation by the parties and a holding out of each other as husband and wife, respectively."

From the testimony of Lucy Yota, it appears that she did not recognize the existence of a marriage relation between herself and Simon Carshall. While she testified that she believed that " we was going to marry," she never testified that she believed that they were married. She testified that "we never did marry," and that the reason she left Simon was because he would not marry her. While she testified that he said that "he would marry me," and that she went to live with him under his promise that he would marry her, he afterward said "He wouldn't marry me," and she left him because, "I wouldn't live with a man that wouldn't marry me." The effect of the evidence as to cohabitation between Lucy Yota and Simon Carshall was destroyed by testimony of Lucy Yota, which shows that there was no marriage between Lucy Yota and Simon Carshall in accordance with any tribal custom, or otherwise.

We must conclude that there is no evidence in this record to support the judgment of the trial court. For that reason that judgment is reversed and the cause is remanded to that court, with directions to render judgment in favor of the plaintiff and against the cross-petitioners as prayed for in the petition of the plaintiff.

HEFNER, CULLISON, SWINDALL, McNEILL, and KORNEGAY, JJ., concur. LESTER, C. J., not participating. CLARK, V. C. J., dissents. RILEY, J., absent.