H. T. HOLLAND, Jr., Plaintiff in Error,

v.

PERRAULT BROTHERS, Inc., a Corporation Ainslie Perrault and Lewis Perrault, as Individuals and as Partners, d/b/a Perrault Brothers, Defendants in Error.

No. 37127.

Supreme Court of Oklahoma.

April 23, 1957.

Rehearing Denied May 28, 1957.

Moseley & Raynolds, by Robert W. Raynolds, and Gable, Gotwals & Hays, by Jack N. Hays, Tulsa, for plaintiff in error.

Wheeler & Wheeler, Tulsa, for defendants in error.

PER CURIAM.

Plaintiff in error, H. T. Holland, Jr., brought this action in the District Court of Tulsa County against Perrault Brothers, Inc., a corporation, and Ainslie Perrault and Lewis Perrault, as individuals, and as partners d/b/a Perrault Brothers, to recover actual damages in the sum of $270,-000, and for exemplary and punitive damages in the sum of $150,000. For convenience we shall refer to the parties as plaintiff and defendants.

A statement of the basic allegations of the petition is necessary in view of the action taken by the trial court in striking certain portions of the petition, which action, with other assignments, is urged as error. The pertinent allegations were in substance: Plaintiff was the owner of one-half of the shares of the capital stock of the Oklahoma Glass Fiber Corporation, a corporation engaged in the process of manufacturing glass fiber and products made therefrom, its principal product being pipe wrap: defendants had been experimenting with the production of plastic pipe, and required glass fibers for such purpose; defendants sought to acquire the ownership and control of the Oklahoma Glass Fiber Corporation in order to obtain the benefit of its "know how" and production methods, and to obtain the services of its experienced employees; defendants conspired to cheat and defraud plaintiff and deprive him of his property, and, pursuant to a plan and scheme to procure control of the corporation, and without intention that plaintiff should be completely compensated for his interest, negotiated the sale by plaintiff to them of his shares of stock according to terms set out in a letter dated December 19, 1950.

In the petition, specific reference was made to certain acts of defendants relied upon to substantiate this claim of conspiracy to defraud in furtherance of the stated scheme *and in wrongful interference with plaintiff's contractual* relations

with the corporation which plaintiff pleads were committed pursuant to a plan and scheme to deprive plaintiff of his property, without fair compensation, by fraudulently inducing a contract for payment of $15.000 per year to plaintiff for 20 years *and interfering with performance of the contract.*

The $270,000 sought by plaintiff as actual damages represented the unpaid amount plaintiff would have received under the contract for $15,000 per year for a 20-year period, and which the corporation could not pay by reason of its insolvency.

The terms of the transfer of plaintiff's interest in the corporation were expressed in a letter from plaintiff to Ainslie and Lewis Perrault. The substance of these terms the Perraults accepted by endorsement on the letter, may be stated as follows: The Perraults were to lend the corporation the sum of $55,000 to pay the balance due the Reconstruction Finance Corporation on a loan; plaintiff was to sell the Perraults, for $45,000, his interest in the corporation represented by 250 shares of its stock; on acquisition of said stock, the Perraults were to cause the corporation to enter into a contract with plaintiff whereby he would receive a minimum of $15,000 per year for 20 years, beginning July 1, 1951, in consideration for engineering and other services he would render, and his agreement not to undertake similar employment, or engage in a similar business. A copy of this letter was attached to the petition as an exhibit.

A second exhibit also attached to the petition, and made a part thereof by reference, reflected the contract for payment of $15,000 per year to plaintiff. This instrument dated December 29, 1950, and denominated "Agreement" between plaintiff and the corporation, provided in substance: That whereas plaintiff had on that date sold his shares in the corporation to the two Perrault brothers, and the contracting parties desired to enter a contract of employment, and the corporation was indebted to plaintiff and the Holland Construction Company in the sums of $12,581.40 and

$42,319.01, respectively, it was agreed that: (1) plaintiff should be employed for 20 years (as indicated above from the first exhibit); (2) plaintiff would not enter or engage in any similar employment during the life of the contract; (3) the corporation would make a promissory note payable to plaintiff, and due July 1, 1951, for the $12,581.40 item; and (4) the corporation would make a new note to the Holland Construction Company, payable December 30, 1951, for the $42,319.01 item. The agreement further provided that the terms thereof should be binding upon, and inure to the benefit of the heirs, legal representatives, successors and assigns of the parties.

At the pre-trial conference, the trial court, seeking to conform statements of counsel for plaintiff to a concise position for the record, as to the point raised, required such counsel to state plaintiff's position on whether the $300,000 ($15,000 per year for 20 years) was for services plaintiff was to perform during that 20-year-period for the corporation, or was for payment of the stock. The court's said endeavor was prompted by statements made by said counsel at the conference, that while the contract for $15,000 per year was mainly in consideration for the stock, said contract was also supported by consideration to the corporation, because plaintiff had performed services for it and had refrained from entering a similar business. In answer to specific inquiry by the court, plaintiff's counsel denied that this contract was solely either, and stated it was both. The trial court then concluded that the petition stated only one cause of action, the same being in tort based on allegations of fraudulent inducement to enter into a contract whereby plaintiff was defrauded of plaintiff's stock for less than its value; that accordingly plaintiff's allegations relating to interference with his contractual relations were not properly incorporated in the petition and should be stricken; that wrongful interference with the contractual relations was a separate cause of action under counsel's admission. The trial court also stated that the contract was either an

employment contract or a purchase price contract, and that if a purchase price contract, it was void because not supported by any consideration inuring to the corporation.

On the date the cause proceeded to trial, counsel for plaintiff moved to reinstate the allegations stricken by the court, requested permission "to separately state the cause of action which the court has heretofore referred to as a separate cause of action, and further to permit the plaintiff to dismiss without prejudice the cause of action for alleged interference with contractual relations." In response to counsel's requests so made, the court stated that he would "permit you to dismiss your cause of action, if one is stated, based upon wrongful interference with contract."

The case proceeded to trial before the court and a jury on the issue as limited by the court. At the close of plaintiff's evidence defendants demurred thereto, and said demurrer was overruled. Defendants then offered no evidence but requested an instructed verdict. The court granted this request and thereafter entered judgment in accord with the instructed verdict for defendants. Plaintiff appeals.

Plaintiff's assignments of error, as covered by the propositions of his brief, in addition to claiming error in limiting the issue to one cause of action, relate to the court's action in instructing a verdict for defendants on plaintiff's failure of proof as to the cause of action for conspiracy to defraud in inducing the sale of the stock, and in excluding certain evidence. Accordingly, we are concerned herein with three questions: Did the court err in limiting plaintiff to the one cause of action under the allegations of his petition and on his position as to the nature of the contract for $300,000? Did the court err in taking the case from the jury under the evidence produced by plaintiff? Was there error in excluding certain testimony?

Plaintiff's right to recovery on a claim for interference with contractual relations depended upon a valid contract with the corporation. To support such cause of action, it was incumbent upon him to establish that he had performed services and had refrained from entering a similar business, and that defendants had interfered to his damage, with the contract between him and the corporation. On the other hand, plaintiff's claim, or cause of action, for conspiracy to deprive him of his stock depended upon proof of such fraudulent acts, and of damages suffered by him in connection with the sale of the stock. It is clear that plaintiff had two courses of procedure. He could sue for loss of his stock under the alleged conspiracy to defraud in inducing the sale, or he could seek recovery for interference with the contract if the supporting consideration ran to the corporation.

■ The trial court properly concluded that the petition stated a cause of action for fraudulent inducement whereby plaintiff was defrauded of his stock for less than its value, and that the allegations therein that defendants had interfered with the contract, should be stricken, as relating to a separate cause of action. Whether or not such cause of action might have been separately stated is another matter. We are of the opinion, and hold, that it could not properly be added; and that, contrary to plaintiff's contention, relief thereon could not be sought as an alternative remedy. While the contract might have been valid as against the corporation under proof that plaintiff had performed services and refrained from entering a competing business, such conclusion in no wise supports plaintiff's cause of action for conspiracy to defraud by inducing sale of the stock. The two purported causes of action are separate and distinct, and, under the allegations of the petition, are inconsistent.

■ A party bringing an action is required to frame his pleading in accord with some definite certain theory, and the relief he claims must be in accord therewith. Gustin v. Carshall, 156 Okl. 173, 10 P.2d 250; W. L. Hulett Lbr. Co. v. Bartlett-Collins Co., 206 Okl. 93, 241 P.2d 378. In Herbert v. Wagg, 27 Okl. 674, 117 P. 209

(an earlier case stating the rule here applied) this court pointed out that the rule applies to the measure of damages or relief to which a party supposes himself entitled.

We find no error in the trial court's action in limiting the issue on plaintiff's pleading and the admissions of his counsel; and, upon request for dismissal of the cause of action on interference with contractual relations, the cause properly proceeded to trial on the issue of plaintiff's right of recovery for alleged conspiracy to defraud by inducing him to sell his stock. We pass then to the argument relating to the instructed verdict.

It appears from plaintiff's evidence that, in accordance with the stock sale agreement, Perrault Brothers did advance the $55,000 for payment of the R. F. C. loan and this indebtedness was discharged; that they paid the $45,000 referred to in the letter, reciting the terms of the stock sale, as consideration for the stock; that both the $12,581.40 and $42,319.01 items were paid and that the corporation entered the yearly payment contract with plaintiff and he received two $15,000 payments thereon. In this situation, such evidence as plaintiff might have in support of his allegation of fraud in inducing the contract for sale of the stock was necessarily dependent upon events transpiring after the transfer of stock.

The evidence incorporated in the voluminous record of this case consists of the testimony of plaintiff; the testimony of Dr. Piero Modigliani, owner of the remaining one-half of the stock at the time plaintiff sold his stock to the Perrault Brothers, and who conveyed one-half of his interest to these purchasers at the time of said sale; the testimony of several employees and former employees of the corporation; a large number of exhibits, including records of the corporation; and testimony of bookkeepers and accountants in connection with such records. It is plaintiff's contention that the evidence proves a preconceived plan of defendants to deprive him of his interest in the corporation. All of plaintiff's evidence that was offered and accepted by the court as competent, related to circumstances reflecting the financial status of the corporation at pertinent times, and the conduct of the business and affairs of the corporation by defendants after transfer of the controlling interest therein through purchase of plaintiff's stock. If plaintiff's evidence was sufficient to sustain his cause of action for alleged conspiracy to defraud, such evidence must rise to the degree of certainty required by law. There being an absence of any direct evidence of fraudulent intent at the time the stock sale contract was entered into, the evidence is to be considered in the light of whether or not the circumstantial evidence of subsequent events was sufficient to require the trial court to submit the issue to the jury. In Nissen v. Andres, 178 Okl. 469, 63 P.2d 47, we had occasion to set forth the applicable rules prevailing in this jurisdiction and elsewhere. From the cited case, it appears this court is committed to the rule that where there is no direct evidence to prove a conspiracy, same may be proven by indirect or circumstantial evidence but said evidence must be clear and convincing; and where the facts and circumstances relied upon are as consistent with innocence of wrong doing, as with guilt thereof, the proof fails. The cited case supports the further conclusion that where circumstantial evidence is relied upon to establish a conspiracy, and the evidence does not rise to the degree required by law, it is within the province of the court to direct a verdict for the defendant.

After plaintiff had introduced evidence and defendants had elected to present none, but stood on their position that plaintiff's evidence was insufficient to justify the jury in returning a verdict for him, the trial judge announced his intention to instruct the jury to return a verdict for defendants and coupled this announcement with a statement of his conclusions as to the evidence and the law applicable thereto. The substance of this statement may be set forth as follows: The undisputed evidence

reflected that all payments prescribed in the sales contract had been paid, and the corporation had in fact entered into the contract to pay plaintiff $15,000 per year, and accordingly, all conditions of the written contract for the sale had been complied with; that such compliance would, in the absence of fraud, settle the matter; that, on consideration of all the evidence, the court was of the opinion that plaintiff had failed to prove the fraud charged; that plaintiff's attempt of proof in this regard was based on the fact that defendants, after gaining control of the corporation, had started selling the products to themselves at 75¢ per square, had transferred personnel from the corporation plant to a plant already owned by them; that in purchasing the controlling interest in the stock, defendants were only concerned with acquiring knowledge of production methods and the product; that prior to the stock sale, and while plaintiff and Modigliani were in full charge, the corporation had entered into a contract with the Perraults whereby the corporation was bound to furnish the product at the price of which plaintiff complains, and by reason of other provisions therein, accorded defendants such rights as to constitute the contract "a complete answer that the Perraults were merely trying to get the know-how and fibers" to be used in another plant, by reason of the provisions of the contract prescribing the very things plaintiff relied upon as evidence of fraud; that while the corporation probably failed because the material was sold at 75¢ when it was costing 77¢ to produce (rather than 45½¢ as plaintiff suggested) when the stock sale was being negotiated, the defendants were by reason of the prior contract authorized to so purchase it; and the Perrault Corporation, the Perraults and the Oklahoma Glass Fiber Corporation, being separate entities, even though the corporations were owned by the same people, all might deal with each other as separate entities; that since there was no sufficient proof of fraud to justify the jury in setting aside the contract—a sufficient answer in itself to plaintiff's charges—the jury should return a verdict for defendants.

From a careful examination of the testimony of plaintiff's witnesses, extended by numerous references to details of accounting, and the great number of exhibits reflecting the books and records relied upon, we cannot say that the evidence produced by plaintiff rises to the degree of proof required by law, which, according to Nissen v. Andres, supra, must lead to belief, and do more than raise a suspicion.

We are here concerned with subsequent acts relied upon to establish a conspiracy, and such acts, if sufficient, must clearly indicate the prior combination and fraudulent purpose, and warrant the conclusion that said subsequent acts were done in furtherance of the unlawful combination and in pursuance of the fraudulent scheme.

 While it may be said that the insolvency of the corporation which prevented payment to plaintiff occurred while under the management of defendants, and plaintiff's proof of the cause thereof might be consistent with an immoral purpose to destroy the corporation, it is also true that under the facts developed, the actions of the defendants subsequent to their gaining control of the corporation, in continuing under the previous contract of purchase and in the operation of the business, was equally consistent with a lawful motive, being operations consistent with their rights of management, and the use of a lawful contract of purchase. Breach of a contract is not evidence of fraud in its negotiation. See Farmers Union Co-Operative Royalty Co. v. Southward, 183 Okl. 402, 82 P.2d 819; Downtown Chevrolet Co. v. Niccum, 180 Okl. 616, 71 P.2d 957. In each of these cases, we pointed out that to render fraudulent the nonperformance of a promise, to be performed in the future, the promise to perform must be accomplished by an intent not to perform. In this case, the promise to pay was not made by the Perrault Brothers. They promised only that the contract would be made. Plaintiff testified that he sought neither

their payment nor their guarantee of payment, and relied entirely on payment by the corporation.

In Owens v. Automotive Engineers, Inc., 208 Okl. 251, 255 P.2d 240, 241, par. 4 of the court's syllabus, we stated: "A person may protect his contractual rights although his act may invade another's contractual rights where the former's interest is equal or superior to that of the latter, and where the former acts with the honest intent and purpose of fairly protecting his own interests or rights under their mutual agreements." See also National Life & Accident Ins. Co. v. Wallace, 162 Okl. 174, 21 P.2d 492. We think the evidence in this case shows the corporate defendants' actions to have been as consistent with their rights, as with a wrongful purpose to defraud plaintiff, under the cited rule. Under the applicable rules of law, we find no error in the conclusion reached by the trial court that the evidence was insufficient to justify submitting the issue to the jury.

Only the proposition relating to the exclusion of evidence remains. It arises from the action of the trial court in excluding the testimony of two witnesses as to a statement which one Shackleford, identified as general manager of the defendants' affairs, made at a meeting in plaintiff's office, relative to moving personnel and operating defendants' separate plant. Shackleford, deceased at the time of the trial, was purported to have stated in effect that defendants did not intend that plaintiff be paid under the yearly payment contract, and that plaintiff and Modigliani should try to get the plant back. Plaintiff argues that the statement made by Shackleford was a declaration against interest, and should not have been excluded. There is nothing in the showing made by plaintiff as to what the witnesses would have testified to; nor anything in the record of this case showing that Shackleford was acting as an agent of defendants and within the scope of his employment, in making the statement in question. Under such circumstances, the evidence was inadmissible. Sears, Roebuck & Co. v. Robinson, 183 Okl. 253, 80 P.2d 938; Pierce Oil Corporation v. Myers, 117 Okl. 161, 245 P. 863.

We find no error in the proceedings.

Affirmed.

The Court acknowledges the aid of the Supreme Court Commissioners in the preparation of this opinion. After a tentative opinion was written by Commissioner J. W. Crawford, and approved by James H. Nease and Jean R. Reed, the cause was assigned to a Justice of this Court for examination and report to the Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.