**BOWER-VENUS GRAIN CO. v. NORMAN MILLING & GRAIN CO.**

No. 10657—Opinion Filed May 9, 1922.

(Syllabus.)

1. **Sales—Breach of Contract as to Quality —Rescission by Buyer — Action for Money Received—Petition—Sufficiency.**

Where the plaintiff alleged in its petition that it purchased a carload of corn of the defendants, the corn to be No. 2 white, according to destination, weights and grades, that the defendant shipped a car of corn to plaintiff and drew draft for $2,682.39, with bill of lading attached, which draft the plaintiff paid as the purchase price of the corn, and that when the car of corn arrived the plaintiff ascertained that the corn was not of the kind and grade purchased according to an official inspection made, that the plaintiff immediately notified the defendants of its refusal to accept the corn and drew a draft upon the defendants for the amount paid by the plaintiff for the corn, which the defendants refused to pay, and that by reason thereof the defendants were indebted to the plaintiff in the amount paid for the corn for money had and received, held, the petition stated a cause of action and the court did not commit error in overruling the demurrer of the defendants filed to the petition.

2. **Same—Right to Reject Article Sold.**

Where a sale is made of an article to be of a certain kind and quality, the tender of an article of the kind and quality sold is a condition precedent to the purchaser's liability, and if the condition is not performed the purchaser has the right to reject the article delivered, provided he does so within a reasonable time.

3. **Customs and Usages—Evidence — Altering Written Contract.**

Evidence of custom and usage is not admissible to vary, add to, or contradict the terms of a plain and definite contract or impose a duty or obligation upon a party to a contract not incorporated therein where such duty or obligation is expressly or impliedly excluded by the terms of the contract.

4. **Same—Evidence to Explain Contract.**

Evidence of custom of usage is generally admissible to explain the meaning and intention of parties to a contract where the contract is ambiguous and the meaning is uncertain without the aid of extrinsic evidence and the parties had knowledge of the existence of the custom or usage sought to be established.

5. **Sales — Rescission — Action for Money Received—Judgment Affirmed.**

Record in this cause examined, and held, that the judgment of the trial court should be affirmed.

Error from Superior Court, Muskogee County; Guy F. Nelson, Judge.

Vilas V. Vernor, for plaintiffs in error.

Action by Norman Milling & Grain Company, a corporation, against Bower-Venus Grain Company, a partnership, composed of J. W. S. Bower and H. J. Venus, to recover the sum of $2,682.39 for money had and received. Judgment for plaintiff, and defendants bring error. Affirmed.

John H. Mosier and J. B. Dudley, for defendant in error.

KENNAMER, J. The Norman Milling & Grain Company, a corporation, as plaintiff, commenced this action against Bower-Venus Grain Company, a partnership, composed of J. W. Bower and H. J. Venus, defendants, in the superior court of Muskogee county.

The petition of the plaintiff, in substance, alleged that on April 6, 1918, the defendants wired plaintiff offering for sale one car bone dry Oklahoma No. 2 white corn $1.97, to which the plaintiff replied by wire: "Wire received. Offer $1.95 one car dry Oklahoma No. 2 white corn, deliver Norman, destination weights and grades." That on April 6, 1918, the defendants wrote the plaintiff the following letters:

"Bower-Venus Grain Co.,
"Wholesale Grain, Hay & Feed.
"Muskogee, Okla., 4-6-1918.
"Norman Milling & Grain Co.,
"Norman, Okla.
"Dear Sirs:-

"We sold to you today the following: 1 car Okla. No. 2 white corn, Price $1.95, Basis Norman, destination, weights and grades, cars to be loaded to marked capacity, shipment within at once days to you at Norman.

"Send invoice covering shipments and draw on you with bills of lading attached at Norman, leaving reasonable margin to guarantee weights and grades.

"Notify us immediately if any error or irregularities in this confirmation, otherwise same will be accepted as correct.

"Yours very truly,
Bower-Venus Grain Co.
"By H. J. V."

"Bower-Venus Grain Co.,
"Muskogee, Okla., 4-6-7918.
"Norman Milling & Grain Co.,
"Norman, Okla.
"Gentlemen:

"Agreeable with our exchange of wires today we are booking your car of Okla. white corn at $1.95 per bushel delivered. This car will go forward at once. We thank you for this order and ask that you let us hear from you when again in the market.

"We have a car of Kaffir corn at Broken Arrow, that we offer at $4.00 per cwt. delivered subject to previous sale. Wire us if interested.

"Yours truly,
"Bower-Venus Grain Co.
"HJV. V."

That the plaintiff confirmed the sale of the corn by the following letter:

"April 6, 1918.
"Bower-Venus Grain Co.,
"Muskogee, Okla.
"Gentlemen:

"This letter will confirm our purchase from you today by wire, of one car of Oklahoma No. 2 white corn at $1.95 a bushel, delivered Norman, Oklahoma, destination weights and grades, shipment at once.

"Yours very truly,
"Norman Milling and Grain Company."

The petition alleged that these letters and messages constituted the contract of sale. That pursuant to the contract entered into between the plaintiff and defendants, the defendants shipped to the plaintiff a car of corn via the Missouri, Kansas & Texas Railway Company, and on the 9th day of April, 1918, drew a draft upon the plaintiff for $2.682.39, with bill of lading attached to said draft, representing the purchase price of the corn. That on the 11th day of April, 1918, the plaintiff paid the draft, and that thereafter on the 21st day of April, 1918, the car of corn arrived at Norman, Okla., its destination. That on the same date of the arrival of the corn, plaintiff had the corn inspected by M. I. Jordan, federal inspector, and that said inspector delivered to the plaintiff the following certificate:

"Grain Inspection Certificate,
"No. 1535, Original.
"Oklahoma Board of Trade,
"Oklahoma City, Oklahoma,
"April 21st, 1918.

"I hereby certify that I hold a license under the United States Grain and Standards Act to inspect and grade the kind of grain covered by this certificate; that on the above date I inspected and graded the following parcel of grain; and that the grade thereof, according to the official grain standards of the United States, is that stated below:

"Car Initials S. E. Car No. 80178. Location Their Track, Amount 1 car, Kind Shelled Corn, Grade No. 3 mixed. Analysis, Foreign Material and Cracked Corn, 6 per cent. Damaged 4.4 per cent. Moisture 14 per cent., Other colors 7.4 per cent., Inspected for Norman Mill & Grain Co.

"M. I. Jordan, Licensed Inspector."

That the plaintiff, after receiving the certificate and having ascertained that the car of corn was not of the kind and grade ordered and purchased on April 22, 1918, sent the following message to the defendants:

"Car corn eighty seventeen eight received today. Federal Inspection graded mixed. We cannot use it. Advise."

That thereafter, on the 24th day of April, 1918, the plaintiff wrote a letter to the defendants calling attention to their failure to deliver corn in accordance with contract and requesting them to make disposition of the corn, also to advise the defendants that a draft had been drawn for the amount of the draft paid for the purchase price of the corn plus 50c inspection fee.

That the defendants failed and refused to pay the draft, and by reason thereof, are indebted to the plaintiff in the sum of $2,682.-89, with interest.

To the petition filed by the plaintiff, the defendants filed a general demurrer. The demurrer was overruled and exceptions allowed.

The defendants answered, admitting the making of the contract as set forth in the plaintiff's petition, but asserting a compliance therewith. The defendants pleaded a custom and usage with reference to contracts of this kind and the rules of the Grain Dealers Association for the state of Oklahoma, under which it was alleged that if the car of corn did not grade up to that as ordered, where the defendants had agreed to guarantee the plaintiff against loss, it was the duty of the plaintiff to unload the corn and handle it for the account of the defendants. The trial court sustained a motion to strike that part of the defendant's answer pleading custom and usage, to which action of the court the defendants excepted.

The cause was tried to a jury on the 17th day of February, 1919, which resulted in a verdict in favor of the plaintiff for the amount sued for, and upon the verdict of the jury the court entered judgment. Defendants filed timely motion for new trial, which was overruled by the court, to which action of the court the defendants excepted and gave the statutory notice in open court of their intention to appeal to the Supreme Court.

The defendants have prosecuted this appeal to reverse the judgment of the trial court and assigned eight assignments of error for reversal of the judgment. We will refer to the parties as they appeared in the trial of the cause.

Counsel for the defendant argues, as the first ground for reversal of this cause, that the court erred in overruling the defendant's demurrer to the plaintiff's petition. It is the contention of counsel in support of this assignment of error that the plaintiff having paid the draft attached to the bill of lading for the corn in controversy, title thereby vested in the plaintiff, that he be-

came the owner of the car of corn and that he is precluded thereby from recovering the purchase price paid. We are unable to concur with counsel in this contention. It is immaterial in this case whether the title to the corn passed upon the payment of the draft by the plaintiff, for, conceding that it did, it would be merely a conditional title subject to the right of inspection and rejection if the corn was inferior in quality to the corn sold to the plaintiff under the terms of the contract of sale. If the title, in fact, passed to the plaintiff, it was a conditional title, and the condition was that the corn should be found to be of the quality purchased. Eaton v. Blackburn et al. (Ore.) 96 Pac. 871-73; Alden v. Hart, 161 Mass. 576, 37 N. E. 742.

Under the terms of the contract of sale, the corn was to be weighed and graded at destination. It is clear, under this contract, the purchaser had the right to inspect the corn when same was received at Norman, the destination of the same, and if upon an inspection of the corn it was found not of the quality sold, the purchaser had the absolute right to reject the corn and refuse to accept it. The rule is, where goods are ordered of a specific quality, which the vendor undertakes to deliver to the purchaser by a carrier at a distant place, the right of inspection, in the absence of any specific provisions in the contract, continues in the vendee until the goods are received and accepted at their ultimate destination. The carrier is not the agent of the vendee for the purpose of accepting the goods as corresponding with the contract, although the carrier may be the agent of the vendee for the purpose of transporting the goods to the vendee. Eaton v. Blackburn et al., supra.

This court, in the case of Brown v. Davidson, 42 Okla. 598, 142 Pac. 837, held:

"If the sale is of a described article, the tender of an article answering the description is a condition precedent to the purchaser's liability; and, if the condition is not performed, the purchaser has the right to reject the article, or if he has paid for it, to recover the price as money had and received for his use."

The court, in the opinion, approved the rule announced in Benjamin on Sales, page 798, section 918, as follows:

"When the vendor sells an article by a particular description, it is a condition precedent to his right of action that the thing which he offers to deliver, or has delivered, should answer the description. * * * If the sale is of a described article, the tender of an article answering the description is a

condition precedent to the purchaser's liability, and if this condition be not performed, the purchaser is entitled to reject the article, or if he has paid for it, to recover the price as money had and received for his use; whereas, in case of warranty, the rules are very different, as will appear post."

This court, in the case of Emerson-Brantingham Imp. Co. v. Ware, 71 Oklahoma, 174 Pac. 1066, held:

"Where an article is sold according to a particular description, and the thing delivered is not according to the description, it is a nonperformance of the contract upon the part of the seller.

"Where a sale is made of a described article, the tender of an article answering the description is a condition precedent to the purchaser's liability, and if the condition is not performed the purchaser has the right to reject the article delivered, provided he does so within a reasonable time."

Under these authorities it is quite clear that the petition stated a cause of action and that the demurrer of the defendants was properly overruled.

The second proposition argued by counsel for the reversal of the cause is that the court committed error in striking that part of the defendant's answer pleading usage and custom and excluding the evidence with reference thereto. It is the contention of counsel for the defendants that, although the plaintiff found the car of corn to be inferior in quality to the corn purchased by plaintiff under contract of sale, it was its duty to accept the corn and dispose of it for the defendants, the defendants having notified the plaintiff they would protect it against any loss in disposing of the corn for them. Counsel cite the rule as found in 12 Cyc. pages 1081 and 1082, as follows:

"The admission of evidence of a custom and usage is not dependent on the rule that parol evidence is not admissible to vary a written contract, but on the ground that the law makes the custom and usage a part of the contract, the same taking hold where the contract leaves off." Custom & Usage, 12 Cyc. p. 1081.

"Evidence of Custom and usage is allowed not only to explain, but to add tacitly implied incidents to the contract in addition to those which are actually expressed."

We have no fault to find with this rule, but we are unable to see how the rule in any way supports the contention of counsel for the defendants in this case. The rule is universally adhered to by the authorities that custom and usage may be proved to aid the court in the construction of an ambiguous contract, but no authority supports the rule that custom and usage may be established to vary the terms of a definite written contract, or to relieve a party from a solemn obligation assumed by him under the terms of a definite contract, or to impose upon one of the parties to the contract a duty not expressed in the contract or that may not fairly be implied therefrom. 17 C. J. p. 495; Powell et al. v. Thompson, 80 Ala. 51.

This court, in the case of Cherokee Grain Company v. Elk City Flour Mills Company, 78 Okla. 120, 188 Pac. 1067, announced the rule in harmony with great weight of authority:

"Customs or usages may properly be received to ascertain and explain the meaning and intention of the parties to a contract, whether written or parol, the meaning of which could not be ascertained without the aid of such extrinsic evidence, where the parties knew of the existence of the custom or usage, and contracted in reference to it."

In the instant case the defendants contracted to deliver a car load of No. 2 white corn to the plaintiff at Norman according to destination, weights, and grades. Therefore, as a prerequisite to the right of the defendants to insist upon the plaintiff accepting the corn, they must deliver such corn as they had contracted to deliver, and their obligation in this respect cannot be avoided under any custom which directly conflicts with their contractual obligation. Hence, the trial court did not commit any error in striking that part of the answer pleading custom or usage as a defense to the action.

In view of our conclusion reached in respect to the first and second propositions argued by counsel for the defendants, it is unnecessary to consider the third proposition, that the court erred in overruling defendants' demurrer to the plaintiff's evidence.

The fourth proposition argued by counsel for the defendants is that the court erred in excluding a sample of corn offered in evidence and the testimony of one of the defendants with reference to the condition of the corn at Muskogee, Okla. Under the terms of the contract of sale the defendants sold the corn according to weights and grade at destination. Therefore, it was immaterial as to the grade of the corn at Muskogee, as the destination of the corn was Norman.

This court, in the case of Citizens' Independent Mill & Elevator Co. v. Perkins, 52 Okla. 242, 152 Pac. 443, held:

"Where corn is purchased, as of a certain grade and quality, according to official inspection, such inspection, in the absence of anything to impeach it as dishonest or collusive, is conclusive as to grade and quality shipped.

"In an action against a grain dealer for breach of contract for corn purchased by him of a certain grade and inspection, it is entirely immaterial what the condition of the corn is when it reaches its destination, if the agreed inspection shows it was of the grade contracted for."

The rule announced here is supported by the weight of authority. The defendants in this case did not attack by any pleading the inspection made by Mr. Jordan, who was an official and licensed inspector, both of the federal and state government. This inspection made was conclusive, in the absence of collusion or fraud.

The evidence in the case at bar established clearly the fact that the corn tendered by the defendants to the plaintiff was not of the quality which the defendants had obligated themselves to deliver to the plaintiff. We are unable to see how the jury could have arrived at any other verdict than one in favor of the plaintiff, and finding no reversible error in the record, the judgment of the trial court is affirmed.

PITCHFORD, V. C. J., and KANE, JOHNSON, and MILLER. JJ., concur.