OWENS v. AUTOMOTIVE ENGINEERS, Inc.

No. 35151.   Feb. 10, 1953.

Rehearing Denied March 31, 1953.

*255 P. 2d 240.*

Harlan Deupree, Oklahoma City, for plaintiff in error.

Richardson, Shartel & Cochran, By R. C. Jopling, Jr., Oklahoma City, for defendant in error.

O'NEAL, J.   Automotive Engineers, Inc., as plaintiff, recovered a judgment against Frank C. Owens, in the sum of $15,301.09, upon an alleged breach of a written and oral agreement entered into on August 16, 1947, and October 25, 1947, respectively.   From the order denying defendant a new trial, he appeals.

The Automotive Engineers, Inc., a corporation, will hereafter be referred to as plaintiff, and Frank C. Owens, as defendant, as they appeared in the trial court.   The Western Tire & Equipment Company, the predecessor to the plaintiff, will be referred to as Western.

In some respects the petition with its various amendments is not a model of impeccable pleading.   Although the code sanctions amendments both before and during trial, the present case illustrates the confusion and error which have arisen in the trial of the case due to first pleading a written contract, then an oral modification thereof, and lastly, when the trial had progressed for several days, again amending to plead a new and additional cause of action based upon an alleged tort.

Admittedly, the agreement of August 16, 1947, does not accurately or completely delineate the facts as known to the plaintiff.   It is represented that the present authorized capital of plaintiff corporation is $45,000.   In fact, it was only $35,000.   It recites that whereas defendant is desirous of purchasing $12,500 of the authorized capital stock of the proposed corporation, it then further states that defendant has paid said $12,500 to the plaintiff.   Whereas, in fact, defendant at the time had paid only $1,000 covering the $2,000 proposed purchase of the stock.

For an understanding of the issues as cast, it will be necessary to refer at some length to plaintiff's petition and its amendments and to the defendant's answer.

On January 6, 1948, plaintiff filed its original petition alleging it and defendant entered into a written contract, under date of August 16, 1947, wherein plaintiff agreed to sell and defendant agreed to purchase certain shares of stock in plaintiff's corporation; that defendant paid plaintiff $2,000 cash and now owes the sum of $10,500, the balance of the agreed purchase price of the stock.   A copy of the contract is attached to plaintiff's petition.

On March 25, 1948, plaintiff filed an amended petition wherein plaintiff repleaded the execution of the contract of August 16, 1947, and then alleged that all of the parties to the contract agreed that plaintiff could perform that portion of the contract in which it agreed to increase the authorized capital stock of plaintiff corporation by increasing the same to an authorized capital of $75,000 in lieu of $150,000 as provided for in the contract.   It is then alleged that defendant has refused to pay the balance due for the stock purchased in the sum of $10,500, and that by reason of defendant's breach to perform the terms of the contract, plaintiff has been further damaged in the sum of $23,984.75.   The item of $23,-984.75 is alleged to cover the difference between the present free market value of Automotive Engineers, Inc., after plaintiff performed its obligations un-

der the contract and the free market value of said corporation prior to the execution of the contract. The prayer is for a recovery of $34,484.75.

On May 12, 1948, plaintiff filed an amendment to its petition wherein it adopts the allegations of its first amended petition, and then further states that on October 25, 1947, at the Baker Hotel in Dallas, Texas, the signers of the contract of August 16, 1947, orally agreed to increase the authorized capital stock of plaintiff corporation to $75,000 in lieu of the $150,000 specified in the previous written agreement. With reference to the damages sought for the alleged breach of both the written and oral agreements, plaintiff states that the $23,984.75 item is composed of $4,-780 expended by plaintiff in the performance of the contract, which would not have been expended had not defendant entered into the contract relied upon, and that the sum of $19,204.-35 represents the difference between the present free market value of plaintiff corporation and the free market value of said corporation prior to the execution of the contract of August 16, 1947.

On March 22, 1950, and during the trial of the case upon its merits, plaintiff filed its second amendment to its petition, and after adopting the allegations of its first amended petition, pleaded that defendant requested and encouraged plaintiff to fully perform its obligations under the written agreement of August 16, 1947, advising plaintiff that defendant intended to comply with his obligations under the contract. Plaintiff states that these representations were false and that plaintiff relied upon them to its detriment. Plaintiff further alleges that within a month after the execution of the August 16th contract, defendant ratified and confirmed the contract by making an additional payment of $1,000 covering the purchase price of the stock. Finally, plaintiff states:

"Plaintiff further alleges and states that defendant attempted to procure and did procure the breach of said contract by T. G. Whitener; that on or about January 5, 1948, defendant, in the presence of T. G. Whitener and K. R. Rone, president of plaintiff's corporation, stated 'Whitener does not have to comply with the contract.'

While in the amended petition plaintiff sought a recovery in the sum of $34,484.75, the present demand is reduced to the sum of $29,704.35.

On December 10, 1948, defendant filed his answer to all of the above pleadings, in which, after a general denial, defendant admits his signature to the written contract, dated August 16, 1947, attached to plaintiff's petition, but he denies that the written agreement is or purports to be an agreement between plaintiff and defendant for the subscription of stock in plaintiff's corporation. It is then alleged that shortly prior to the signing of the August 16, 1947, agreement, defendant entered into an oral agreement with plaintiff that defendant would purchase 250 shares of the plaintiff corporation and pay therefor the sum of $12,500 provided that plaintiff corporation performed the following conditions, to wit:

(a) That plaintiff corporation then named Western Tire and Equipment Company, with an authorized capital stock of $35,000.00 would amend its articles of incorporation by changing its name to Automotive Engineers, Incorporated, and would increase its then capital stock of $35,000.00 to $150,000.00, of which $75,000.00 would be initially subscribed by the stockholders of Western and by this defendant and one T. G. Whitener.

(b) That plaintiff corporation would be expanded and improved, and that it would secure a new and better location in which to carry on its business.

(c) That the $75,000.00 of par value stock was to be immediately issued as follows: The assets of Western Tire and Equipment Company were to be inventoried and the fair market value thereof determined and approved by defendant and Whitener; and that the then stockholders of Western would subscribe for additional stock at a par

value of $15,000.00 and would pay therefor in cash a sum equal to the difference between the actual cash value of the assets so determined and approved by defendant and Whitener, and the sum of $50,000.00 which would represent the par value of their holdings in the reorganized corporation, and that when this was done defendant and Whitener would each purchase at par value shares of stock in the amount of $12,500.00; the remaining $75,000.00 of stock was to be issued only as dividend stock.

(d) That plaintiff was required under the agreement to secure the services of T. G. Whitener as general manager of the new corporation and place him in complete charge of the business.

(e) That subsequent to the agreement as above set forth, plaintiff procured defendant to sign the August 16th contract upon the representation that the contract was for the sole purpose of procuring Whitener as the corporation's general manager, and it was not intended to change or vary the previous agreements entered into between plaintiff and defendant.

(f) That defendant relying upon plaintiff's representations paid plaintiff $2,000.00 to be applied upon the $12,500.00 stock to be issued to him.

(g) Defendant alleges plaintiff did not comply with the agreements in that:

1st. Plaintiff did not secure the increase of the authorized capitalization of the corporation.

2nd. Plaintiff failed and refused to issue the stock in the manner represented to defendant and Whitener, and for the consideration to be received therefor by plaintiff corporation.

3rd. That plaintiff failed and refused to comply with its agreement and plaintiff was unable to procure the services of Whitener, and that Whitener did not purchase the stock referred to in the contract.

In the alternative, defendant pleaded that if the contract of August 16th should be held to be an effective agreement between plaintiff and defendant that by mutual mistake the agreement failed to contain a material element of

their agreement, in that it did not contain the reorganization plan of the corporation, or for the issuance of stock to the existing stockholders of Western, or the provision that the $75,000 of the par value of the stock was only to be issued as dividend stock.

Finally, defendant states that plaintiff's amendment, filed during the trial, attempted to plead an action sounding in tort which was barred by the statute of limitations.

The contract of August 16, 1947, is unusual and unique in that the Western Tire & Equipment Company and Frank C. Owens are named parties of the first part, and T. G. Whitener is named party of the second part. Omitting the "Whereas" recitals the Agreement reads:

"(1) That the Western Tire & Equipment Company, of Oklahoma City, immediately after the execution of this contract, will file its amendment to its Articles of Incorporation as has been duly approved and adopted by the directors and stockholders of said company and that the amendment to said Articles of Incorporation changes the name of said corporation from The Western Tire & Equipment Company to Automotive Engineers, Inc., and the authorized capital stock from $45,000.00, divided into 900 shares at $50.00 each, par value, to an authorized capital of $150,000.00, which is divided into 3000 shares at $50.00 each, par value.

"(2) That The Western Tire & Equipment Company will issue 250 shares of the authorized capital stock of Automotive Engineers, Inc., to Frank Owens, Oklahoma City, as soon as the amendment to the Articles of Incorporation of the Western Tire & Equipment Company have been duly filed with the Secretary of State of the State of Oklahoma.

"(3) That the Western Tire & Equipment Company will undertake an expansion and enlargement of its operations immediately after the filing of the amendment to its Articles of Incorporation and that a new, larger, more improved store will be obtained by it and an enlarged and improved stock of goods

will be obtained by it prior to January 1, 1948, and in accordance with the suggestions and recommendations of party of the second part; that it will employ the party of the second part as general manager of this new and expanded enterprise at such times as the party of the second part may designate, but not later than January 1, 1948.

"(4) That the party of the second part on or before January 1, 1948, will purchase $12,500.00 of the capital stock of Automotive Engineers, Inc., paying cash therefor in the amount of the par value of the said stock and that the same shall be issued by Automotive Engineers, Inc., to the party of the second part fully paid and non-assessable.

"(5) That on or before January 1, 1948, party of the second part agrees to come to Oklahoma City and assume the management of Automotive Engineers, Inc."

The defendant filed both general and special demurrers to the various amendments to plaintiff's petition and objected to the filing of the amendment during the trial as barred by the statute of limitations, and that the various amendments did not state a cause of action entitling plaintiff the relief prayed for. Defendant also moved at the close of the trial for a directed verdict. Each of said demurrers and motions were overruled.

A resume of the facts necessary for consideration discloses that Western had an authorized capital of $35,000. The contract of August 16th, upon which plaintiff relies in part, represented the corporation had an authorized capital stock of $45,000. As disclosed by this contract, Western agreed to change its name to Automotive Engineers, Inc., and increase its capital stock from $45,-000 to $150,000. Plaintiff corporation thereafter increased its capital stock to $75,000 under its contention that defendant and Whitener orally agreed to this reduction in capital.

Mr. Rone, president of plaintiff corporation, testified that at the time the contract of August 16th was signed by defendant, it was agreed by the parties that the stock of the new corporation would be issued to the then stockholders of Western when Western stockholders made up the difference between the approved inventory value of the merchandise and the $50,000 stock the stockholders were to receive from the new corporation. He was asked:

"Q. But your agreement with him was that the stock should be issued against the inventory and the balance in cash, wasn't it? A. That was in an outside agreement; yes, sir. It wasn't in the contract."

Under the reorganization of the corporation with an authorized capital stock of $75,000, defendant and Whitener were to receive $12,500 par value of the stock and the balance thereof, $50,000, as testified to by plaintiff's president, was to be issued to the present stockholders of Western, but, as we have seen, the written contract does not contain such a provision. An inventory was prepared by plaintiff as of September 30, 1947, and was submitted to Whitener and the defendant. Plaintiff's president was positive in his declaration that there was no agreement by the corporation with defendant or Whitener to scale down and take out worthless or objectionable items reflected in the inventory. This position of plaintiff is greatly weakened by Mr. Rone's subsequent statement that Whitener objected to various items as duplicates and to other items as slow moving stock, and that defendant did request that the slow moving stock should be taken out of the inventory and that the inventory as a whole should be valued at its fair market value. Plaintiff corporation agreed to meet these suggested amendments, but its testimony discloses that it and the defendant did not come to an understanding or agreement as to the value to be placed upon the inventory which was to go into the new corporation. The comparative balance sheet of Western of September 30, 1947, shows an inventory of $42,551.31 and as of December 31, 1947, an inventory value of $42,-264.21. So, under plaintiff's admissions

and defendant's contention, the old stockholders were obligated to pay into the new corporation the difference between the amount of the inventory, the sum of $7,448.69, as of September 30, 1947, or the sum of $7,735.29, as of December 31, 1947.

Mr. Rone, president of the plaintiff corporation, stated that the $35,000 in stock and the $10,000 surplus, and the increase in the value of the inventory was well in excess of $50,000 and justified the issuance of the $50,000 reissuance of stock to the former stockholders of Western. As we have seen, the contract does not so provide. Moreover, plaintiff corporation could not thus dispose of its inventory and surplus as that belonged to a corporation, not to a privileged group of stockholders.

Mr. Nolan F. Young, employed by plaintiff corporation from June until December 30, 1947, was asked the following question:

"Q. Was the entire $50,000.00 to be paid by Western Tire & Equipment Company to be paid in cash?"

He answered:

"A. The stock (inventory) of the Western Tire & Equipment Company, and additional cash to make up the $50,-000.00, was to constitute the shares of the Western Tire & Equipment Company (meaning its stockholders)."

Plaintiff's evidence conclusively shows that the conditions of the agreement were not performed.

Upon the last amendment to plaintiff's petition it sought and obtained a judgment upon an allegation sounding in tort, in that defendant attempted to procure and did procure the breach of said contract with T. G. Whitener, in that on January 5, 1948, defendant stated to Mr. Rone, president of plaintiff corporation, in the presence of Whitener, the following: "Whitener does not have to comply with the contract."

Upon the trial Mr. Rone testified as follows:

"Mr. Owens said he was not going through with the contract for the fact that his company wouldn't permit him to do so, and that Tony Whitener didn't have to do so unless he wished to."

Mr. Rone's statement enlarges the allegation relied upon in plaintiff's amended petition. No other evidence was introduced to sustain the cause of action based upon tort. It is neither charged nor established by proof that defendant was actuated by malice or improper motives; nor is it even suggested that the contractual obligations of the parties were thereby affected.

In support of defendant's answer, Mr. Owens testified that the written agreement of August 16th was prepared by Mr. Rone, president of plaintiff corporation, and was presented to him with the assurance that it was prepared for the sole purpose of employing Whitener as the general manager of the proposed reorganized corporation; that prior to defendant signing the agreement he and Whitener had entered into an oral agreement with plaintiff, that if Western changed its name and capitalized at $150,000, and if the old stockholders of Western subscribed for $50,000 of the capital stock based upon the market value of the merchandise as shown by an inventory to be approved by defendant and Whitener, and make up the difference in cash, that defendant and Whitener would each take $12,500 of the stock of the new corporation, with the further condition that Whitener become the manager thereof; that plaintiff furnished defendant and Whitener an inventory showing a valuation of approximately $32,000. This valuation of the merchandise was not approved by defendant or Whitener; they marked the articles which were to be deleted from the inventory with red pencil and presented it to the corporation; they were advised by its president that the challenged and unapproved items of the inventory would be deleted. Relying upon this representation, defendant

made a payment of $1,000 to be applied upon the stock purchase. Defendant testified that neither he nor Whitener agreed that the new corporation might be capitalized at $75,000, instead of $150,000. Defendant further testified that plaintiff and he agreed that under the oral contract only the value of the merchandise as shown by the inventory as approved by Whitener and defendant was to go into the value of the stock to be issued to stockholders of Western. Defendant declined to go further with the deal until this agreement was complied with, and he refused to make further payments for the stock. Plaintiff then insisted that defendant would have to take over all of the assets of Western which would represent the value of the $50,000 stock to be issued to Western stockholders. These assets included the following items: An auto truck valued at $2,411.01; an item of bills receivable $9,705.94; an item of $4,000 was listed as an investment in a joint venture which Mr. Rone, president of plaintiff corporation, was individually interested in covering a stock of merchandise in another city; and an item of $5,100 as good will. These items were reflected in a financial statement which plaintiff's president presented to defendant, with the remark, "This is what you are buying." Defendant replied, "No." Plaintiff never denied this transaction.

When Whitener refused to pay for his stock or report to take over the management of the corporation, plaintiff suggested that defendant act as its manager, to which suggestion defendant advised plaintiff that his present employment would not permit his devoting part time to the management of the business. The record discloses that thereafter plaintiff corporation disposed of its stock of merchandise and ceased to operate as a going concern.

As Disraeli has said: "It is much easier to be critical than it is to be correct."

Our review of the record, however, leads to the inevitable conclusion that the result of the verdict was not based upon the proven facts, but was largely influenced by the failure of the court to clearly delineate the issues that were supported by the proof. The pleadings as heretofore noted were voluminous in character and were copied verbatim in the court's instructions to the jury.

In Rhodes v. Lamar, 145 Okla. 223, 292 P. 335, we suggested it was not good practice for the court to formulate the issues by reading the pleadings of the parties to the jury in the instructions. Defendant has challenged several instructions as not being within the issues and . proof. The challenged instructions are subject to serious criticism and we think they unquestionably resulted in the erroneous verdict rendered.

As we view the record, the contract between the plaintiff corporation and the defendant was, in part, written, and, in part, oral. Plaintiff was required to perform three conditions: namely, (a) create a new corporation with a capital of $150,000; issue to the stockholders of Western $50,000 of the stock and to the defendant and Whitener each $12,500 of the stock in the new corporation; (b) take out of the inventory of Western all items of merchandise not approved and accepted by defendant and Whitener; that to the value of the approved inventory the stockholders of Western were to pay into the corporation, cash so that the combined value of the inventory and the cash would represent the value of the stock in the sum of $50,000 to be issued to Western's stockholders; and (c) that the corporation was to acquire the services of Mr. Whitener, as of January 1, 1948, to manage and operate the business.

Under plaintiff's evidence it did not perform the conditions of its agreement. It was either unable or unwilling to perform and therefore it cannot require performance by the defendant. The remark by defendant that Whitener did not have to perform his agreement,

without further allegation or proof, is insufficient to warrant the judgment upon tort action. Where plaintiff as in the instant case pleaded full performance of the agreements and which allegations were denied by defendant, plaintiff to recover must bear the burden of proof of performance. This it failed to do. Camp v. Black Gold Petroleum Co., 195 Okla. 30, 154 P. 2d 769; Roudebush v. Snell, Jr., 103 Okla. 291, 229 P. 1067; Anderson & Kerr Drilling Co. v. Bracht, 177 Okla. 394, 60 P. 2d 758; Miller v. Young, 197 Okla. 503, 172 P. 2d 994; Messick v. Johnson, 167 Okla. 463, 30 P. 2d 176.

In Vogel v. Fisher, 203 Okla. 657, 225 P. 2d 346, we said:

"The conduct of a party to a contract, which prevents or dispenses with performance by the adverse party, is equivalent to a waiver of the right to require performance."

Neither do we think that plaintiff stated a cause of action in the amendment of March 22, 1948, wherein plaintiff pleaded that defendant in the presence of T. G. Whitener and K. R. Rone, president of plaintiff corporation, stated: "Whitener does not have to comply with the contract," and the verdict and judgment upon this cause of action cannot be sustained.

In McCracken v. Cline, 55 Okla. 37, 154 P. 1174, we announced the following rule:

"A petition which alleges that defendant made false representations to plaintiff, but fails to allege that plaintiff believed such representations and relied and acted thereon to his damage, does not state a cause of action for deceit."

The amendment did not allege or was there proof in support thereof, that defendant was actuated by malice, or that the statement caused Whitener to abandon his obligations under the agreement. The statement was made after plaintiff's president stated to the defendant that defendant would have to take all of the assets of the old corporation into the new corporation and after plaintiff had devalued the stock by attempting to issue $15,000 in stock to its old shareholders without consideration therefor, and in direct violation of the parties' agreements. No law prevents one from speaking out to protect his own interest, and to express his opinion to his associate that he too need not comply when the opposite party is not complying with their mutual agreements. This principle of law is announced in Schonwald v. Ragains, 32 Okla. 223, 122 P. 203; National Life & Accident Ins. Co. v. Wallace, 162 Okla. 174, 21 P. 2d 492, and Chicago, R. I. & P. Ry. Co. v. Armstrong, 30 Okla. 134, 120 P. 952.

Justice Brewer in Angle v. Chicago, St. P. M. & O. R. Co., 151 U. S. 1, 14 S. Ct. 240, 38 L. Ed. 55, announced the rule that to sustain an action for interfering with contractual rights between two parties, it must be stated and proven that the interference was malicious.

Under the record here presented, it is shown that defendant had made two payments of $1,000 each to apply upon his stock purchase, and that he stood ready and willing to complete the further payments thereon upon plaintiff's compliance with the terms of their mutual agreement. Upon plaintiff's breach of the contract, defendant was entitled to recover the $2,000 which he had paid the corporation. The court erred in refusing to direct a verdict for the defendant for this sum.

The judgment in favor of the plaintiff is reversed, with directions to enter judgment in favor of the defendant against the plaintiff in the sum of $2,000, with interest thereon from the date each payment was made.

JOHNSON, V. C. J., and WELCH, CORN, WILLIAMS, and BLACKBIRD, JJ., concur. DAVISON, J., dissents.