**PUBLIC SERVICE COMPANY OF OKLAHOMA, an Oklahoma Corporation, Appellant,**

v.

**HOME BUILDERS ASSOCIATION OF REALTORS, INC., an Oklahoma Corporation, and Home Builders Association of Greater Tulsa, Inc., an Oklahoma Corporation, Appellees.**

**No. 49004.**

Supreme Court of Oklahoma.

Sept. 21, 1976.

---

**2.** *McKenzie v. Feldman,* 434 P.2d 884 (Okla. 1967).

**3.** *Consumers' Light & Power Co. v. Phipps,* 120 Okla. 223, 251 P. 63 (1926).

Robert L. Lawrence, Kenneth W. East, Kevin M. Abel, Tulsa, for appellant.

Rizley, Prichard, Ford, Norman & Reed by Charles E. Norman, Janine Van Valkenburgh, Tulsa, for appellees.

HODGES, Vice Chief Justice.

This is an appeal by appellant, Public Service Company of Oklahoma, an Oklahoma corporation, (PSC), from the decision of the trial court which entered judgment for appellees, Home Builders Association of Greater Tulsa, Inc., an Oklahoma corporation, (Home Builders). The action was brought by PSC seeking an injunction against Home Builders to prevent the construction of an asphaltic-concrete or concrete driveway and parking lot on the surface of PSC's underground electrical right-of-way. PSC asserted the placement of the proposed driveway and parking lot would invade, cause irreparable injury, and interfere with the maintenance of the electrical system lying under the surface of the right-of-way, and that the proposed construction was violative of its easement.

PSC sought to permanently enjoin and restrain Home Builders from placing the driveway and parking lot upon the surface of its right-of-way, and a temporary injunction pending the district court's decision on a permanent injunction.

The trial court found: PSC failed to prove irreparable injury would result because of the construction; maintenance of PSC's electrical system would not suffer unreasonable interference; the system could be repaired; PSC had an adequate remedy at law for damages; and because of these findings an interpretation of the word "structure" contained in the conveyance need not be determined. The trial court denied the granting of a temporary injunction. PSC timely appeals from the interlocutory order denying a temporary injunction pursuant to 12 O.S.1971 § 993(a)(2).[1]

The typewritten portion of the conveyance provides:

"Grantee in further consideration for the dedication of this easement agrees with Grantor, its successor and assigns, as follows: (1) That Grantee will use reasonable diligence and dispatch in its operations with respect to installation, constructing, and maintenance of its electrical service; and (2) That Grantee in connection with installation, constructing, and maintenance of its electrical service will restore the surface of the easement granted hereunder in as good a condition as it was prior to use as an easement including any landscaping or screening."

The other pertinent printed clauses of the conveyance provide:

"While the installations to be made by Grantee in pursuance of this grant are made to facilitate the development of Grantor's property and are permanent in

---

1. Appeal from certain interlocutory orders is permitted by 12 O.S.1971 § 993(a)(2): When an order denies a temporary injunction, the party aggrieved thereby may, within thirty days thereafter, appeal from the order to the Supreme Court without awaiting the final determination in such cause, by filing the petition in error and the record on appeal in the Supreme Court; provided the Supreme Court may extend the time for filing the record on good cause shown.

nature, Grantor nevertheless reserves the right to require relocation of all or a part of said facilities installed by Grantee hereunder to the extent, from time to time, as is necessary to permit the further development of said property, upon the condition, however, and it is hereby agreed that Grantor, or the successors in interest to Grantor, will bear the cost of any and all such relocations.

"Also granting said Grantee, its successors and assigns, the perpetual right, privilege and authority to prevent the placement of any structure that may, in the judgment of the Grantee, interfere with or endanger said underground electrical system or its maintenance and operation; and to enter upon the above described premises for the purposes of constructing, operating, maintaining, reconstructing and removing its said underground electrical system aforesaid, and further granting to said Grantee, its successors and assigns, the right, privilege and authority to construct, operate, maintain, reconstruct and remove such underground electrical system under, upon, over and across any street, alley, highway, railroad or other right-of-way now or hereafter established and existing on or across said premises or adjoining the same or adjacent thereto."

■ PSC asserts on appeal that the trial court erred in failing to interpret the word "structure," and that it was essential that the trial court determine if a driveway and parking lot were structures forbidden by the easement. PSC also alleges that the word is not intrinsically ambiguous as defined in the conveyance. We agree that the trial court should have interpreted the word "structure" but we do not agree that

it is not intrinsically ambiguous as used in the conveyance. The easement provides that the electrical installations were made to facilitate the development of grantor's property. It also provides the grantor or its successors can demand removal and relocation of PSC's facilities and restoration of the surface on one hand, while the grantee can prevent construction of a structure on the other. The clauses of the conveyance when construed together render the utilization of the word "structure" ambiguous. In cases of equitable cognizance, this court is not bound by the reasoning of the trial court or by its findings but will examine the whole record, consider and weigh the evidence, and if the law and facts warrant, will affirm the judgment if the trial court reached the correct ultimate conclusion.[2] After a careful examination of the record and an examination of all the evidence, we find that the trial court reached the correct ultimate result.

■ Under Oklahoma law, a conveyance is to be interpreted and the intention of the parties ascertained in the same manner as other written contracts.[3] The first element in construction of any conveyance whether it is in connection with the description of the property or some other phase of the conveyance is to ascertain the intention of the parties.[4] In construing a conveyance of doubtful meaning, the intention of the parties must be ascertained, particularly that of grantor.[5] Uncertainties in conveyances are to be clarified by resort to the intention of the parties as gathered from the instrument itself, circumstances attending and leading up to its execution, and the subject matter and situation of the parties as of that time.[6] The

2. *City of Moore v. Central Oklahoma Master Conservancy District*, 441 P.2d 452 (Okl. 1968). See also *Asher v. Doyle*, 50 Okl. 460, 150 P. 878 (1915).

3. *Herron v. Rozelle*, 480 F.2d 282 (10th Cir. 1973); *Johnson v. Butler*, 206 Okl. 632, 245 P.2d 720 (1952).

4. *Geb v. Wilkins*, 399 P.2d 456 (Okl.1965).

5. *Davis v. Moore*, 387 P.2d 483 (Okl.1963).

6. *Riedt v. Rock Island Implement Co.*, 521 P.2d 79 (Okl.1974).
   It is provided by 15 O.S.1971 § 163:
   A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates.

purpose of construction of a reservation or a grant is to find the intent of the grantor.[7]

Where, from an examination of a written contract in its entirety, the intent of the parties thereto is obscure and uncertain, resort may be had to parol evidence to show the situation of the parties, circumstances surrounding the execution of the contract and the negotiations preceding and leading up to the making of the agreement in order to arrive at the contract's true intent and meaning.[8] If there is an ambiguity or uncertainty as to the meaning of the terms used in a written contract between the parties, usages and customs may be resorted to for the purpose of interpreting them and to fix and explain the meaning of the expressions and words of doubtful and various meaning. Words which are technical or ambiguous on their face, or foreign or peculiar to the sciences or arts, or to particular trades, professions, occupations or localities are explainable where they are employed in written instruments by parol evidence of usage;[9] and that the parties entered into the contract with knowledge of and in respect to such usage.[10]

The evidence of all the witnesses is undisputed that in Tulsa, Oklahoma, the word "structure" is not used in the building trade or profession as including a driveway or parking lot. The grantee testified the parties did not discuss the meaning assigned to the word "structure" at the time the conveyance was executed. The grantor specifically testified it was not his intent in granting the easement to PSC to pre-

vent the location of a driveway or parking lot over the easement. The grantor, an expert in the field of management and development, stated the term "structure" does not include driveways or parking lots and that it is common business practice in the locality for driveways in a commercial development to be located along side lot lines (over the easement) and leading to the rear of buildings. He also stated it was his intent in requesting the typewritten portion of the conveyance requiring grantee to restore the surface to its original condition to include driveways, and that a different construction of the word "structure" would have been contrary to development efforts in the area. Other witnesses testified that building permits were not required by the City for construction of driveways and that set-back requirements in restrictive covenants in Tulsa were never interpreted as restricting the paving of driveways. The testimony was that underground electrical facilities had been paved over on numerous occasions without PSC's objection.

We find that the intent of the parties and the custom and usage in the locality are not compatible with the construction of the word "structure" to mean a driveway and parking lot within the restrictions of the conveyance.

Restrictions and prohibitions in the use of real property are not favored by law, and the terms of such covenants will not be enlarged by implication, but will be confined to their accepted usage and the intention of the parties.[11] Building restrictions are stricti juris and every doubt

7. *Jolly v. Wilson*, 478 P.2d 886 (Okl.1970).

8. *Owens v. Automotive Engineers, Inc.*, 208 Okl. 251, 255 P.2d 240 (1953).

9. *Cleveland v. Mascho*, 95 Okl. 22, 222 P. 1008 (1924).
   15 O.S.1971 § 160 provides:
   The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning, unless used by the parties in a

techical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed.

10. *Daniel v. Pappas*, 93 Okl. 165, 220 P. 355 (1923); *Bower-Venue Grain Co. v. Norman Milling & Grain Co.*, 86 Okl. 152, 207 P. 297 (1922).

11. *Veal v. Hopps*, 183 Okl. 116, 80 P.2d 275 (1938).

should be resolved in favor of the unencumbered use of the property. When differences arise, the intention of the party encumbering the property as expressed in the conveyance must be looked to and consideration given to the entire context of the instrument rather than to a single phrase or clause.[12] In *Purcell v. Thaxton,* 202 Okl. 612, 216 P.2d 574, 576 (1950), citing *Rogers v. Kinney,* 122 Okl. 73, 250 P. 890, 891, an action to construe a conveyance, the court said:

"A court of equity will look at the real object of a deed and the intention of the parties, and will compel the fulfillment of both, and, if possible, the intention of the grantor will be gathered from the whole instrument. If the intention of the parties to the deed is plain, parol evidence is not admissible to prove an intention different from the terms of the deed, but where a deed possesses an element of uncertainty, parol evidence, the admission of the parties and other extraneous circumstances may be proved to ascertain its true meaning."

Regardless of how broad the terms of a contract may be, its terms extend only to those things concerning which it appears the parties intended to contract.[13] Irrespective of stereotyped or general printed provisions appearing in a contract, the literal or sweeping terms of a contract may never prevail over what appears to the court to be the rational and general intent of the parties thereto.

We find the intention of the parties was not to include driveways and parking lots within the restriction prohibiting building of a "structure" without approval of the grantee.

AFFIRMED.

All Justices concur.

12. *Salerno v. De Lucca,* 211 La. 659, 30 So. 2d 678.

13. *First National Bank v. Gillam,* 134 Okl. 237, 273 P. 261 (1929).